**STATE ex rel. DAVIS et al., Relators,**

v.

**PUBLIC EMPLOYEES RETIREMENT BOARD et al., Respondents.**

[Cite as *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 174 Ohio App.3d 135, 2007-Ohio-6594.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–1293.

Decided Dec. 11, 2007.

---

136

138

Buckley King L.P.A., James E. Melle, and Donell R. Grubbs, for relators.

Marc Dann, Attorney General; Jones Day, Michael R. Gladman, and Kerstin Sjoberg–Witt, for respondent Public Employees Retirement Board.

Ron O'Brien, Prosecuting Attorney, and Nick A. Soulas, Jr.; Lane, Alton & Horst, L.L.C., and Teri G. Rasmussen, for respondents.

FRENCH, Judge.

{¶ 1} Relators, 12 present and former Franklin County Assistant Public Defenders and support personnel hired between January 1, 1985, and January 1, 1999, bring this original action for a writ of mandamus ordering respondent, Public Employees Retirement Board ("PERB"), to vacate its determination that relators were not public employees during the period between January 1, 1985, and January 1, 1999, and, thus, were not entitled to service credit during that period under the Public Employees Retirement System ("PERS"). Relators also request that the writ compel respondents, Franklin County Board of Commissioners, Franklin County Public Defender Commission ("FCPDC"), Franklin County Public Defender, and Yeura Venters, as the Franklin County and city of Columbus Public Defender (collectively, "Franklin County respondents"), to remit employer and employee contributions to PERB on behalf of relators for the relevant period.

{¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ (attached as Appendix A). Specifically, the magistrate concluded that PERB correctly determined that the doctrine of collateral estoppel or issue preclusion bars relators' claims.

{¶ 3} Relators filed objections to the magistrate's conclusions of law, and respondents filed memoranda in opposition to relators' objections. Thereafter, relators filed a reply in support of their objections, which respondents have moved this court to strike, arguing that Loc.R. 12(M) does not permit reply memoranda. Although Loc.R. 12(M)(3) requires an objecting party to file a memorandum in support of objections to a magistrate's decision simultaneously with the party's objections and clearly authorizes the filing of a memorandum in opposition to such objections, the rule does not provide for any further memoranda. Accordingly, we grant respondents' motion to strike relators' reply, and we shall not consider it in our review of relators' objections.

{¶ 4} Relators do not object to the magistrate's findings of fact, and we adopt those findings as our own. In their objections to the magistrate's conclusions of law, relators contend that the magistrate erred as a matter of law by:

1) finding and concluding that Relators' claims for retroactive service credit are barred by the doctrine of issue preclusion;

2) finding and concluding that Relators are in privity with the Relator in the case of *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430 [793 N.E.2d 438] 2003-Ohio-4123 ("*Van Dyke*" );

3) failing to consider and decide Relators' argument that the application of the preclusion doctrine in this case denies Relators due process of law; and

4) failing to examine the evidence from the *Van Dyke* and *Mallory* (*State ex rel. Mallory v. Pub. Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235 [694 N.E.2d 1356]) cases.

Relators also argue that the magistrate's decision is against the manifest weight of the evidence because respondents did not sustain their evidentiary burden of establishing a preclusion defense. Because relators' objections all concern the applicability of issue preclusion to their claims, we address the objections together.

{¶ 5} We review the magistrate's decision independently and may "adopt or reject [the] magistrate's decision in whole or in part, with or without modification[,] * * * hear [the] * * * matter, take additional evidence, or return [the] matter to a magistrate." Civ.R. 53(D)(4)(b). We may also accept the magistrate's ultimate decision for reasons other than those addressed by the magistrate. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, Franklin App. No. 04AP–1293, 2005-Ohio-6612, 2005 WL 3415995, at ¶ 13.

{¶ 6} A brief historical context is necessary to a discussion of relators' claims. In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defenders Act, which established the Ohio Public Defender Commission and authorized counties to create county and joint-county public defender commissions. Pursuant to those provisions, the Franklin County Commissioners established FCPDC to provide legal representation to indigent persons. In accordance with R.C. 120.14, FCPDC appointed the Franklin County Public Defender, who, in turn, hired attorneys and support personnel to form the Franklin County Public Defender's Office ("FCPDO"). FCPDO operated as if it were a private, unincorporated association, and both FCPDO and its employees paid Social Security taxes on their wages.

{¶ 7} In 1984, the General Assembly enacted R.C. 120.14(F), which authorized county and joint-county public defender commissions to contract with nonprofit organizations to provide representation to indigent criminal defendants. Thereafter, FCPDO was incorporated as a nonprofit entity on December 31, 1984. FCPDC then contracted with the Franklin County Commissioners and the city of Columbus to provide legal representation for indigent criminal defendants in Franklin County and the city of Columbus and subcontracted with the newly incorporated FCPDO to provide such services.

{¶ 8} This case is one of several concerning whether FCPDO employees qualified as public employees, as defined by R.C. 145.01(A), for purposes of PERS membership. First, in June 1998, the Ohio Supreme Court granted a writ of

mandamus ordering PERB to credit a former FCPDO employee for her years of service as an attorney and law clerk with FCPDO from 1978 to 1980 and from 1982 to 1994. *State ex rel. Mallory v. Public Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235, 694 N.E.2d 1356. In *Mallory,* the Supreme Court held that prior to the incorporation of FCPDO in 1984, FCPDO employees were public employees under R.C. 145.01(A):

> [P]re–1984 FCPDO employees like [Mallory] were public employees during their employment with the FCPDO. Pursuant to statutory authority, FCPDO employees were employed by a county agency (the commission) and a county officer (Franklin County Public Defender Kura) to perform a governmental function, *i.e.,* the function of providing legal representation to indigent criminal defendants, for which FCPDO employees were paid by the county.

Id. at 241, 694 N.E.2d 1356.

{¶ 9} After concluding that Mallory was a public employee entitled to PERS membership during her periods of FCPDO employment prior to FCPDO's incorporation, the Supreme Court questioned whether the 1984 enactment of R.C. 120.14(F), the incorporation of FCPDO, and the contractual relationship between FCPDC and FCPDO terminated Mallory's continued membership in PERS. The court held that it did not, stating that an FCPDO attorney who continued to represent indigent criminal defendants after FCPDO's incorporation was entitled to continuing service credit with PERS under R.C. 145.01(A)(2). Id. at 245, 694 N.E.2d 1356. R.C. 145.01(A)(2) defines a "public employee" as "[a] person who is a member of [PERS] and who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function."

{¶ 10} In August 2003, the Supreme Court again addressed the status of FCPDO employees as public employees in *State ex rel. Van Dyke v. Public Emp. Retirement Bd.,* 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438. Like Mallory, Van Dyke began her employment for FCPDO prior to its incorporation. Van Dyke worked for FCPDO, first as a legal intern and later as a staff attorney, from February 1982 until November 1985, when she resigned to accept a position as a staff attorney with the Franklin County Court of Common Pleas, Division of Domestic Relations, Bureau of Support ("support bureau"). In March 1986, Van Dyke resigned her position with the support bureau, and FCPDO rehired her as a staff attorney, a position she retained until August 1991. In accordance with *Mallory,* PERS granted Van Dyke service credit for her FCPDO employment from February 1982 until November 1985, when she resigned. Van Dyke also received service credit for her employment with the support bureau. However, PERS denied Van Dyke service credit for her employment with FCPDO from

March 1986 to August 1991, concluding that, upon her return to FCPDO, she no longer qualified as a public employee under R.C. 145.01(A)(2).

{¶ 11} After PERS denied her request for service credit from March 1986 to August 1991, Van Dyke initiated a mandamus action to compel PERB to grant her service credit for her second period of FCPDO employment. Van Dyke did not argue that FCPDO remained a public employer after its incorporation in 1984; rather, she alleged entitlement to service credit solely on the basis of R.C. 145.01(A)(2), the carryover provision at issue in *Mallory*. *Van Dyke*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, at ¶ 15. This court agreed with Van Dyke's contention that she was a carryover employee when she returned to FCPDO from her position with the support bureau. The Supreme Court disagreed, concluding that R.C. 145.01(A)(2) was inapplicable to Van Dyke's re-employment by FCPDO because "she was not 'continuing' her employment with a private contractor that was taking over a previously publicly operated function." Id. at ¶ 29. Rather, the Supreme Court stated that Van Dyke "was beginning a term of employment with a private contractor that years before had taken over the publicly operated function." Id. Thus, the Supreme Court held that Van Dyke was not entitled to PERS service credit for her second period of employment by FCPDO.

{¶ 12} Relators here were among 51 claimants who requested an administrative determination that FCPDO was a public employer between December 31, 1984, and January 1, 1999 (the "post–1984 time period") and that claimants were public employees entitled to PERS membership during their respective periods of employment during the post–1984 time period. Relators' employment history differs from the employment histories of Mallory and Van Dyke because relators were not FCPDO employees prior to FCPDO's incorporation. Rather, relators were hired after December 31, 1984, when FCPDO was incorporated, and before January 1, 1999, after which date all FCPDO employees were treated as public employees. Thus, this action concerns whether FCPDO employees newly hired during the post–1984 time period qualified as public employees for purposes of PERS.

{¶ 13} By letter dated September 3, 2003, the parties were informed of the PERS staff decision to deny claimants' claims. The staff decision notes claimants' contention that FCPDO remained a public employer or an agent of a public employer despite its incorporation as a nonprofit entity. However, based on *Van Dyke*, the staff decision determined that claimants were not public employees during the post–1984 time period because they were employed by a private entity.

{¶ 14} Claimants appealed the staff decision to PERB, pursuant to Ohio Adm.Code 145–1–11, and PERB appointed a hearing examiner to hear the

appeal. The hearing examiner directed the parties to file pre-hearing briefs, specifically addressing the applicability of the doctrines of claim preclusion and/or issue preclusion and the effect, if any, of *Van Dyke* on claimants' claims. On June 28, 2004, the hearing examiner issued findings of fact and conclusions of law recommending that PERB determine that FCPDO was not a public employer during the post–1984 time period. The hearing examiner acknowledged the "core issue" as "whether [FCPDO] was a public employer between 1984 and 1999" and stated that relators sought to demonstrate public-employer status through evidence of the control that Franklin County exercised over FCPDO. The hearing examiner stated that relators' claims involve "arguments of: agency, control, alter ego, lack of mind, will or existence of its own, or piercing the corporate veil." Nevertheless, the hearing examiner did not address relators' arguments or evidence regarding Franklin County's control of FCPDO.

{¶ 15} Based upon the Supreme Court's characterization of the post-incorporation FCPDO as a "private contractor" in *Van Dyke,* 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, at ¶ 29, the hearing officer found that the doctrine of issue preclusion precluded relitigation of FCPDO's status during the post–1984 time period. Accordingly, the hearing examiner concluded that during the post–1984 time period, the FCPDO was not a public employer and claimants were not public employees. By letter dated August 25, 2004, PERB notified claimants' counsel that it had accepted the hearing examiner's recommendation. Thus, the claimants' requests for PERS service credit were denied by a final administrative decision of PERB. Relators filed this mandamus action on December 3, 2004.[1]

{¶ 16} As previously noted, the magistrate concluded that PERB correctly applied the doctrine of issue preclusion to bar relitigation of FCPDO's post-incorporation status and preclude relators' action. Like the hearing examiner, the magistrate did not consider relators' claims regarding Franklin County's control over FCPDO.

{¶ 17} In their objections, relators argue that the magistrate erred in applying issue preclusion. The doctrine of issue preclusion is one of two related concepts, along with claim preclusion, within the legal doctrine of res judicata. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. Claim preclusion holds that a valid, final judgment on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. Id. at syllabus. Issue preclusion, also known as collateral estoppel, provides that "a fact or a point that was

---

1. Although relators petitioned for class certification, pursuant to Civ.R. 23, this court denied relators' petition. See *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 34.

actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Assn. v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140. While claim preclusion precludes relitigation of the same cause of action, issue preclusion precludes relitigation of an issue that has been actually and necessarily litigated and determined in a prior action. Id., citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 254 N.E.2d 10. Here, we are concerned solely with issue preclusion.

{¶ 18} In *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 637 N.E.2d 917, the Ohio Supreme Court set forth three requirements for application of collateral estoppel or issue preclusion. "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." Id. at 183, 637 N.E.2d 917, citing *Whitehead*, 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph two of the syllabus. "The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a 'full and fair opportunity to litigate that issue in the first action.' " *Cashelmara Villas Ltd. Partnership v. DiBenedetto* (1993), 87 Ohio App.3d 809, 813, 623 N.E.2d 213, quoting *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 74, 6 O.O.3d 274, 369 N.E.2d 776.

{¶ 19} The magistrate concluded that in *Van Dyke,* the Ohio Supreme Court actually and necessarily determined that FCPDO was a private employer after its incorporation in 1984. The magistrate also found that relators are in privity with Van Dyke. Accordingly, the magistrate concluded that relators may not relitigate FCPDO's status as a public or private employer. To the contrary, relators contest the existence of privity between themselves and Van Dyke and contend that no court of competent jurisdiction has actually and directly litigated and determined the status of FCPDO after its incorporation in 1984. Accordingly, relators argue that collateral estoppel is inapplicable to this action.

{¶ 20} We find the doctrine of issue preclusion inapplicable here for two reasons. First, we conclude that relators, against whom preclusion is asserted, are not in privity with Van Dyke. Second, we find that the Supreme Court did not actually litigate and determine the post-incorporation status of FCPDO.

{¶ 21} We first address the issue of privity between relators and Van Dyke. For the doctrine of issue preclusion to apply, the party against whom preclusion is asserted must be identical to or in privity with a party in the former action.

*Thompson*, 70 Ohio St.3d at 183, 637 N.E.2d 917. Because respondents assert issue preclusion against relators, who were not parties in *Van Dyke*, we must determine whether relators were in privity with Van Dyke.

{¶ 22} The Ohio Supreme Court has recognized that "[w]hat constitutes privity in the context of *res judicata* is somewhat amorphous." *Brown v. Dayton* (2000), 89 Ohio St.3d 245, 248, 730 N.E.2d 958. Privity was formerly found to exist only when a person succeeded to the interest of a party or had the right to control the proceedings or make a defense in the original proceeding. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, at ¶ 9, citing *Whitehead*, 20 Ohio St.2d at 114, 49 O.O.2d 435, 254 N.E.2d 10. Such a definition would foreclose any finding of privity here; relators have not succeeded to an interest of Van Dyke, and they had no right to control or actively participate in the *Van Dyke* proceedings. However, the Ohio Supreme Court has acknowledged that certain situations warrant a broader definition of privity, noting that "[a]s a general matter, privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" *Thompson*, 70 Ohio St.3d at 184, 637 N.E.2d 917, quoting *Bruszewski v. United States* (C.A.3, 1950), 181 F.2d 419, 423 (Goodrich, J., concurring).

{¶ 23} Under the relaxed concept of privity that Ohio courts apply for purposes of res judicata, neither a contractual nor a beneficiary relationship is necessary. *Brown*, 89 Ohio St.3d at 248, 730 N.E.2d 958. Rather, the Supreme Court has "applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine [of res judicata]." *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, at ¶ 8, citing *Brown*. For example, the Supreme Court has found privity between a government official sued first in his official capacity and subsequently in his individual capacity for official conduct. *Kirkhart*, syllabus. The Supreme Court has also found privity between a decedent and the decedent's wrongful-death beneficiaries. *Thompson*, 70 Ohio St.3d 176, 637 N.E.2d 917. Privity also exists between an association and its individual members when the members are liable for a judgment against the association. *State ex rel. Clinton Mut. Ins. Assn. v. Bowen* (1937), 132 Ohio St. 583, 8 O.O. 565, 9 N.E.2d 494.

{¶ 24} In *Brown*, 89 Ohio St.3d at 248, 730 N.E.2d 958, the Supreme Court found that "a mutuality of interest, including an identity of desired result," created privity between the plaintiffs there and the plaintiffs in a prior case. The *Brown* plaintiffs, residents and taxpayers of the city of Dayton, challenged the validity of a city ordinance, arguing that the language of the ordinance was not on file for 30 days before it was voted on, as required by the Dayton Revised Code of General Ordinances. Prior to the enactment of the ordinance, another group of

Dayton residents and taxpayers (the *"Wall* plaintiffs") filed a complaint for injunctive relief, seeking to enjoin a vote on or enactment of the proposed ordinance for violation of the 30–day rule, but the trial court found no violation. Although the *Wall* plaintiffs appealed, the court of appeals dismissed the appeal as moot after the passage of the ordinance, and the plaintiffs did not seek further appellate review. See *Wall v. Dayton* (May 4, 1993), Montgomery App. No. 13419, 1993 WL 143770.

{¶ 25} The Supreme Court determined that res judicata barred the *Brown* plaintiffs' claims based, in part, on its finding of privity between the *Wall* plaintiffs and the *Brown* plaintiffs. In support of its finding of privity based on "a mutuality of interest, including an identity of desired result," the Supreme Court stated:

> In neither case did the plaintiffs seek personally tailored relief to fit their unique circumstance or factual situation. All have sought the general disallowance of the Ordinance, and all for the same reason—an alleged violation of the thirty-day publication rule. Plaintiffs all simply refer to themselves as residents and taxpayers within the city of Dayton. We find that their legal interests are the same and that they are in privity with each other for purposes of *res judicata.* To find otherwise would be to allow the Ordinance to come under constant attack simply by replenishing the ranks of plaintiffs.

*Brown,* 89 Ohio St.3d at 248, 730 N.E.2d 958. Although individual plaintiffs in *Wall* and *Brown* differed, the plaintiffs in both cases brought their actions, generally, as Dayton residents and taxpayers, with the same legal interests. The fact that the plaintiffs in both cases sought a general disallowance of the statute, all for the same reason, and sought no relief tailored to individual plaintiffs or groups of plaintiffs, highlighted the identity of the plaintiffs' interests and supported the Supreme Court's finding of privity.

{¶ 26} The Ohio Supreme Court more recently revisited the issue of privity for purposes of res judicata in *O'Nesti.* There, two employees of DeBartolo Realty Corporation and DeBartolo Property Management, Inc. (collectively, "DeBartolo") filed suit, seeking judgment for the value of stock allocated to them under a stock incentive plan. The *O'Nesti* plaintiffs argued that the facts, claims, and issues in their case were identical to those raised in *Agostinelli v. DeBartolo Realty Corp.* (Aug. 18, 1999), Mahoning App. No. 97 CA 227, 1999 WL 669518, a prior action brought by other DeBartolo employees for distribution of stock allocated to them under the stock incentive plan, in which the Seventh District Court of Appeals found in favor of the plaintiffs. In *O'Nesti,* the trial court awarded summary judgment in favor of the *O'Nesti* plaintiffs, and the Seventh District affirmed, finding that claim preclusion barred DeBartolo from raising defenses in *O'Nesti* that it could have raised, but did not raise, in *Agostinelli.*

The Ohio Supreme Court reversed, finding no privity between the *O'Nesti* plaintiffs and the *Agostinelli* plaintiffs.

{¶ 27} Describing scenarios in which privity may exist, the Supreme Court stated that "[a]n interest in the result of and active participation in the original lawsuit may * * * establish privity." Id. at ¶ 9. The court also stated that "[i]ndividuals who raise identical legal claims and seek identical rather than individually tailored results may be in privity." Id., citing *Brown*, 89 Ohio St.3d at 248, 730 N.E.2d 958. Also, citing *Brown*, the court stated that "[a] 'mutuality of interest, including an identity of desired result,' *might* also support a finding of privity," suggesting that mutuality of interest is not always enough to warrant such a finding. (Emphasis added.) Id. For example, despite the mutual interests of both the *O'Nesti* and *Agostinelli* plaintiffs in requiring enforcement of the stock incentive plan, the Supreme Court found no privity. Both the *O'Nesti* plaintiffs and the *Agostinelli* plaintiffs were DeBartolo employees, subject to the same stock incentive plan. The only difference between the plaintiffs was the number of shares to which each plaintiff was entitled under the plan. Nevertheless, the Supreme Court held:

> The relationship between co-employees subject to the same employment-related contract, without more, does not establish privity. We hold that plaintiffs who are employees of the same employer and who have each signed an employment-related contract with the employer are not in privity for the purpose of claim preclusion if each employee is entitled to different benefits under the contract. Accordingly, privity simply does not exist, and appellees may not use claim preclusion to their benefit.

*O'Nesti*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, at ¶ 12. In declining to find privity, the Supreme Court also recognized that the *O'Nesti* plaintiffs "did not actively participate in or have any control over the *Agostinelli* suit" and sought individually tailored results, in the form of a judgment for the value of stock to which each was entitled, rather than a general result. Id. at ¶ 11.

{¶ 28} Here, the magistrate relied on *Brown* to conclude that relators are in privity with Van Dyke based on a mutuality of interest, including an identity of desired result. The magistrate stated that like Van Dyke, relators seek a declaration that they were public employees, notwithstanding the incorporation of FCPDO as a nonprofit entity. The magistrate further stated, "All were employed by the nonprofit defender during the [post–1984 time period], and all seek membership in PERS for their respective service time during the relevant period at issue." While it is uncontested that both relators and Van Dyke were FCPDO employees after its incorporation and sought PERS service credit for such employment, that is the extent of the commonalities between Van Dyke and relators. Upon review, we find the relationship between relators and Van Dyke

more akin to the relationship at issue in *O'Nesti* and conclude that *Brown* does not compel a finding of privity here.

{¶ 29} The plaintiffs in both cases at issue in *Brown* sued, generally, as city residents and taxpayers, all with the same legal interest regarding the proposed ordinance and all seeking to invalidate the ordinance for the same reason. The Supreme Court found a mutuality of interest, including an identity of desired result, because the plaintiffs raised identical claims, based on identical facts, and seeking identical, rather than individually tailored, results. Such a mutuality of interest is absent here, despite respondents' arguments to the contrary. Van Dyke did not seek a general, blanket determination that FCPDO remained a public employer, despite its incorporation in 1984. Rather, Van Dyke based her alleged entitlement to PERS membership on her contention that she maintained continuous county employment since prior to FCPDO's incorporation and was, thus, a public employee pursuant to R.C. 145.01(A)(2). In short, Van Dyke sought relief uniquely tailored to her specific circumstances. In contrast, relators seek a determination that despite its incorporation, FCPDO remained a public employer, thus conferring public employee status on employees newly hired during the post–1984 time period. Also, in the same way that the *O'Nesti* plaintiffs' ultimate relief would differ depending on the number of shares to which each plaintiff was entitled despite general enforcement of the stock incentive plan, relators' relief would differ based on their dates of employment despite a general determination of FCPDO's post-incorporation status.

{¶ 30} Upon review, we do not find sufficient mutuality of interest, including an identity of desired result between relators and Van Dyke, to support a finding of privity between them. Nor do we find any facts demonstrating any other special relationship between relators and Van Dyke to give rise to privity. Accordingly, we find no privity between relators and Van Dyke, and we reject the magistrate's conclusions of law to that effect.

{¶ 31} Even were we to conclude that relators are in privity with Van Dyke, application of issue preclusion fails for an additional reason, namely that the issue of FCPDO's status as a public or private employer after its incorporation was not actually litigated in *Van Dyke*. Before issue preclusion will apply, the fact or issue sought to be precluded from relitigation must have been "actually and directly litigated" and "determined by a court of competent jurisdiction." *Thompson,* 70 Ohio St.3d at 183, 637 N.E.2d 917. Issue preclusion does not apply to other matters that might have been litigated but were not. See *Taylor v. Monroe* (1952), 158 Ohio St. 266, 49 O.O. 118, 109 N.E.2d 271, paragraph three of the syllabus; *O'Nesti,* 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, at ¶ 8. In fact, the Ohio Supreme Court has held that "an absolute due process prerequisite to the application of collateral estoppel is that the party

asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 201, 2 OBR 732, 443 N.E.2d 978. A closer look at the *Van Dyke* opinion confirms that FCPDO's status as a public or private employer, under R.C. Chapter 145, was not actually litigated.

{¶ 32} *Van Dyke,* 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, does not reveal that any party argued that FCPDO remained a public employer despite its incorporation in 1984. Rather, the Supreme Court's statement of Van Dyke's claim reveals that she argued only "that she was a public employee entitled to PERS credit for her second term of employment with FCPDO *because she was a carryover employee under R.C. 145.01(A)(2).*" (Emphasis added.) *Van Dyke* at ¶ 22. In light of Van Dyke's sole argument, the Supreme Court held that "PERB did not abuse its discretion by concluding that Van Dyke was not a public employee *under the carryover provision in R.C. 145.01(A)(2).*" (Emphasis added.) Id. at ¶ 28. In support of its holding that Van Dyke was not a carryover public employee, the Supreme Court stated that when she returned to FCPDO, Van Dyke was not "continuing" her employment with a contractor, but was beginning a new term of employment, at which time FCPDO "was no longer a county agency." Id. at ¶ 29–30. The Supreme Court also found that upon her re-employment, Van Dyke "did not perform the 'same or similar duties' " as she performed for the support bureau and that "FCPDO did not contract to take over the duties performed by Van Dyke at the [support bureau]." Id. at ¶ 31–32.

{¶ 33} Although Van Dyke could have argued that she was entitled to PERS service credit because FCPDO remained a public employer after its incorporation, she chose not to make that claim. Thus, notwithstanding the Supreme Court's statements that FCPDO was no longer a county agency when Van Dyke began her second period of employment, but was a "private contractor that years before had taken over [a] publicly operated function," we find no evidence that the issue of the FCPDO's public or private employer status after its incorporation was actually litigated in *Van Dyke*. Id. at ¶ 29. Rather, the parties in *Van Dyke* recognized both that Van Dyke was not arguing that FCPDO remained a public employer despite its incorporation in 1984 and that relators would be asserting that argument in a separate action.

{¶ 34} In a March 30, 2001 position statement to PERS in Van Dyke's administrative proceedings, counsel for Franklin County and FCPDO stated that the question of PERS eligibility for FCPDO employees newly hired after FCPDO's incorporation was not a part of Van Dyke's request for a determination and "specifically request[ed] that [PERS] staff not make a determination as to the new hire issue until such time as the argument presented by [counsel on

behalf of relators here] is fully addressed separately." Van Dyke had no incentive to fully litigate whether FCPDO's incorporation left its status as a public employer unchanged when all of the parties, including PERS, were aware of the separate proceedings on behalf of relators here and recognized that relators' claims for PERS service credit differed from Van Dyke's claims. As expected, no other party argued that FCPDO remained a public employer despite its incorporation in 1984. Thus, FCPDO's status as a public or private employer after its incorporation was simply not at issue in *Van Dyke.*

{¶ 35} When no party in *Van Dyke* contested FCPDO's post-incorporation status, the Supreme Court's characterization of FCPDO as a private contractor and nonprofit entity does not necessitate the conclusion that the issue was actually litigated. In a similar vein, Ohio courts have held that a fact stipulated in a prior action was not actually litigated, as required to invoke the doctrine of issue preclusion in a subsequent action.

{¶ 36} In *Kerr v. Procter & Gamble Co.* (Feb. 14, 1989), Franklin App. No. 88AP–629, 1989 WL 11961, an action for infliction of emotional distress against the plaintiff's employer, this court held that the issue of whether the plaintiff's injury occurred in the course of her employment had not been actually litigated for purposes of collateral estoppel, despite a stipulation to that effect in a prior workers' compensation appeal. In Kerr's prior appeal from the Industrial Commission's denial of her workers' compensation claim, the parties stipulated that Kerr " 'is seeking workers' compensation benefits as a result of a psychiatric injury and disorder arising from emotional distress she underwent in the course of her employment with the defendant.' " Id., quoting *Kerr v. Procter & Gamble Co.* (Mar. 14, 1988), Franklin C.P. No. 86CV–10–6271. Relying solely on the parties' stipulation, the common pleas court stated that Kerr's injuries occurred in the course of her employment, but affirmed the commission's denial of her claim due to a lack of physical injury. In Kerr's subsequent civil action for emotional distress, this court held that the issue of whether Kerr's injury occurred in the course of her employment was not actually litigated and determined in the workers' compensation appeal where the trial court based its statement to that effect solely on the parties' stipulation. Accordingly, we held that "[i]nasmuch as the issue of whether Kerr's injury occurred in the course of employment remains to be litigated, the doctrine of collateral estoppel does not preclude plaintiffs' arguing in this action that her injury did not occur in the course of her employment." Id.

{¶ 37} Similarly, in *Allstate Ins. Co. v. Merrick* (June 23, 1993), Montgomery App. No. 13812, 1993 WL 224658, the Second District Court of Appeals declined to apply collateral estoppel to preclude litigation of a previously stipulated fact. In a prior tort action, at an in-chambers proceeding described as a damages

hearing, the plaintiffs' counsel read into the record a stipulation of facts, including a statement that some of the defendant's conduct was negligent, while some was reckless and some was intentional. In a subsequent action brought by the same plaintiffs against the tortfeasor's insurer to enforce the tort judgment, the Second District Court of Appeals held that collateral estoppel did not preclude the insurer from litigating whether any of its insured's conduct was negligent. Citing Restatement of the Law 2d, Judgments (1982) 256–257, Section 27, Comment e, the court noted that "an issue is not actually litigated if it is the subject of a stipulation between the parties unless the parties manifested an intention to that effect."

{¶ 38} Although *Van Dyke* did not involve an express stipulation that FCPDO was a private employer after its incorporation as a nonprofit entity, the scenario here warrants the same result. Just as if they had expressly stipulated that FCPDO was a private employer after its incorporation, the parties did not dispute the public or private employer status of FCPDO, putting at issue only the nature of Van Dyke's employment as she moved from FCPDO to the support bureau and back. There is no indication in *Van Dyke* that the Supreme Court actually considered the issue of FCPDO's status rather than simply accepting the uncontested premise asserted by the parties. Thus, we hold that the status of FCPDO was not actually litigated in that case.

{¶ 39} For the foregoing reasons, we hold that the doctrine of issue preclusion does not preclude relators from arguing that FCPDO remained a public employer despite its incorporation as a nonprofit entity in 1984. Accordingly, we reject the magistrate's conclusions of law finding that PERB correctly applied the doctrine of issue preclusion to relators' claims and that such doctrine precludes relators from challenging the post-incorporation FCPDO's status as a public employer. Therefore, we sustain relators' first and second objections to the magistrate's conclusions of law, rendering relators' remaining objections moot.

{¶ 40} Having sustained relators' primary objections, we must now consider whether relators are entitled to the requested writ of mandamus ordering PERB to vacate its determination that relators were not public employees entitled to PERS service credit during the post–1984 time period and ordering the Franklin County respondents to remit employer and employee contributions to PERS on behalf of relators for their employment during the relevant time period. " '[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body.' " *State ex rel. Schaengold v. Ohio Pub. Emp. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, at ¶ 8, quoting *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, at ¶ 14; *State ex rel. Shumway v. State Teachers Retirement Bd.*

(1996), 114 Ohio App.3d 280, 284, 683 N.E.2d 70, fn. 1. Because there is no statutory right to appeal PERB's denial of PERS service credit, mandamus is an appropriate remedy. *Van Dyke,* 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, at ¶ 20. In order to be entitled to a writ of mandamus, relators must establish that PERB abused its discretion. See id. at ¶ 21.

{¶ 41} Applicability of res judicata is a question of law. *Nye v. Ohio Bd. of Examiners of Architects,* 165 Ohio App.3d 502, 2006-Ohio-948, 847 N.E.2d 46, at ¶ 12, citing *Prairie Twp. Bd. of Trustees v. Ross,* Franklin App. No. 03AP-509, 2004-Ohio-838, 2004 WL 344158, at ¶ 12. An administrative agency's misapplication of the doctrine of res judicata may constitute an abuse of discretion that may be remedied with a writ of mandamus. See *State ex rel. Thompson v. Indus. Comm.* (Aug. 31, 1993), Franklin App. No. 92AP-296, 1993 WL 342578 (finding that the Industrial Commission abused its discretion by inappropriately applying res judicata to preclude a relator's eligibility for temporary total disability compensation); *State ex rel. Kincaid v. Allen Refractories Co.,* 114 Ohio St.3d 129, 2007-Ohio-3758, 870 N.E.2d 701 (granting a writ of mandamus where the Industrial Commission abused its discretion by not applying collateral estoppel to preclude relitigation of the totality of the relator's loss of vision). Here, we hold that PERB abused its discretion in applying the doctrine of issue preclusion to preclude relators' claims for PERS service credit.

{¶ 42} While an abuse of discretion, PERB's refusal to consider relators' claims for PERS service credit for the post-1984 time period based on its determination that issue preclusion prohibited litigation of FCPDO's post-incorporation status does not necessarily translate into a finding that relators are entitled to service credit. Although PERB acknowledged relators' arguments of "agency, control, alter ego, lack of mind, will or existence of its own, or piercing the corporate veil" in support of their claims that the post-incorporation FCPDO remained a public employer, PERB did not consider such arguments on their merits, nor did PERB consider the thousands of pages of documents purportedly submitted by the parties regarding such arguments. Therefore, we conclude that a limited writ of mandamus must issue ordering PERB to consider the merits of relators' requests for PERS service credit for their FCPDO employment during the post–1984 time period.

{¶ 43} In conclusion, we sustain relators' first and second objections to the magistrate's decision and overrule relators' remaining objections as moot. Further, we adopt the magistrate's findings of fact as those of the court, but reject the magistrate's conclusions of law finding the doctrine of issue preclusion to be applicable to relators' claims, including the magistrate's conclusions regarding privity between relators and Van Dyke. Additionally, we grant a limited writ of mandamus ordering PERB to vacate its order denying relators' claims for PERS

service credit and to issue a new order adjudicating relators' claims on their merits.

So ordered.

BROWN and KLATT, JJ., concur.

## APPENDIX A

### MAGISTRATE'S DECISION

Rendered July 26, 2007

### IN MANDAMUS

{¶ 44} The relators are Cynthia Davis and 11 other individuals who were hired by respondent Franklin County Public Defender, a nonprofit corporation ("nonprofit defender") during the period beginning January 1, 1985, but before January 1, 1999. In this original action, relators request a writ of mandamus ordering respondent Public Employees Retirement Board ("PERB") to vacate its determination that relators were not public employees during the period January 1, 1985, but before January 1, 1999, and thus were not entitled to service credit for their employment during that time period under the Public Employees Retirement System ("PERS"). Relators also request that the writ order respondent Franklin County Board of Commissioners ("Franklin County Commissioners") to remit employer and employee contributions to PERS on behalf of relators for their employment service during the relevant time period.

### Findings of Fact

{¶ 45} 1. In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defender Act. The Act established the Ohio Public Defender Commission and authorized counties to create county and joint-county public defender commissions. In accordance with R.C. 120.13, Franklin County Commissioners established respondent Franklin County Public Defender Commission ("FCPDC") to provide legal representation to indigent persons as required by law. Pursuant to R.C. 120.14, the FCPDC appointed a Franklin County Public Defender ("FCPD"). The FCPD then hired attorneys and support staff to form the Franklin County Public Defenders Office ("FCPDO").

{¶ 46} 2. In 1984, the General Assembly enacted R.C. 120.14(F) to specifically permit county and joint-county public defender commissions to contract with nonprofit organizations to provide representation to indigent criminal defendants. Following the enactment, the FCPDO was incorporated as a nonprofit corporation on December 31, 1984, when its articles of incorporation were filed with the secretary of state. Thereafter, the FCPDC contracted with the Franklin County

Commissioners and the city of Columbus to provide legal representation for indigent criminal defendants in Franklin County, and the FCPDC subcontracted with the newly incorporated nonprofit defender to provide the contracted-for services.

{¶ 47} 3. In June 1998, the Supreme Court of Ohio decided *State ex rel. Mallory v. Public Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235, 694 N.E.2d 1356. In that case, Diane Mallory was employed at the FCPDO as a law clerk from June 1978 to September 1980 and as an attorney from February 1982 to January 1994. During Mallory's employment at the FCPDO, no contributions to PERS were made on her behalf. Instead, Mallory and the FCPDO paid Social Security taxes. In September 1994, Mallory filed a request seeking service credit in PERS for her 14 years of employment with the FCPDO. PERS denied the request.

{¶ 48} In *Mallory,* the Supreme Court of Ohio held that pre–1985 FCPDO employees, like Mallory, were public employees during their employment with the FCPDO. Thus, Mallory's pre–1985 situation met R.C. 145.01(A)'s definition of "public employee."

{¶ 49} Furthermore, citing R.C. 145.01(A)(2), known as the carryover provision, *Mallory* held that Mallory retained her PERS membership after the incorporation of the FCPDO into the nonprofit defender. Thus, as a carryover employee, Mallory retained her PERS membership into 1985 and beyond.

{¶ 50} 4. In a letter to PERS dated February 8, 2001, relators, through counsel, requested that PERS retroactively grant them service credit for their service with the nonprofit defender during the period January 1, 1985 up to January 1, 1999. Relators indicated that they were hired after January 1, 1985, but before January 1, 1999, as previously noted (the letter noted that effective January 1, 1999, all employees are now covered by PERS).

{¶ 51} In the letter, relators claimed that the incorporation of the FCPDO into the nonprofit defender did not effectuate private employment for relators as was intended. Relators claimed that the nonprofit defender was in fact a public employer because allegedly the FCPDC "has retained sole authority to conduct the affairs of [the nonprofit defender] because [FCPDC] must be the trustee." Relators concluded that the nonprofit defender is merely the "alter ego" of the FCPDC. In short, relators asked PERS to determine that the nonprofit defender was a public employer under R.C. 145.01(D) rather than a private contractor and that relators were public employees entitled to PERS membership.

{¶ 52} 5. By letter to PERS dated July 20, 2001, on behalf of the Franklin County Commissioners and FCPDO, the Franklin County Prosecuting Attorney

opposed the claims set forth by relators in their counsel's February 8, 2001 letter to PERS.

{¶ 53} 6. Thereafter, the parties submitted to PERS various exhibits and additional position letters or statements.

{¶ 54} 7. On August 20, 2003, the Supreme Court of Ohio issued its decision in *State ex rel. Van Dyke v. Public Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438.

{¶ 55} 8. By letter dated September 3, 2003, from PERS's general counsel, the parties were informed of the PERS staff decision. The September 3, 2003 letter explains:

> This matter came before us as a request for OPERS service credit on behalf of Franklin County Public Defender employees during the period December, 1984 through January 1, 1999.
>
> In 1984, R.C. Section 120.14 was amended to permit county public defender commissions to contract with nonprofit organizations to provide representation to indigent criminal defendants. In December of 1984 the Franklin County Public Defender was incorporated as a non-profit organization. The Franklin County Public Defender Commission then contracted with the Franklin County Public Defender to provide such legal services.
>
> Claimants make several arguments as to why they should be considered public employees. Basically, claimants contend that although the Franklin County Public Defender was formed as a non-profit entity in 1984, it was still a public employer or an agent of a public employer.
>
> Based upon the August 20, 2003, decision issued by the Ohio Supreme Court in *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 793 N.E.2d 438, 2003-Ohio-4123, OPERS has determined that the post–1984 claimants are not public employees and are not subject to coverage in OPERS for the time period in question, as their employment was with a private entity and not a public employer, or an "agent" of a public employer as claimants suggest. In *State ex rel. Van Dyke*, the Ohio Supreme Court recognizes the incorporation of the Franklin County Public Defender's Office as a nonprofit organization. The Court specifically states that in 1986 Van Dyke began a term of employment "with a private contractor," * * * and "when she began her second period of employment with FCPDO, it was no longer a county agency." *State ex rel. Van Dyke*, [99 Ohio St.3d 430] 2003-Ohio-4123 [793 N.E.2d 438] at ¶ 29–30. Accordingly, as the claimants were not working for a public employer, their claims for coverage must be denied.
>
> This determination is subject to appeal to the OPERS Retirement Board per Ohio Admin. Code 145–1–11.

{¶ 56} 9. Pursuant to Ohio Adm.Code 145–1–11, relators administratively appealed the staff decision.

{¶ 57} 10. Relators' administrative appeal prompted PERS to appoint a hearing examiner.

{¶ 58} 11. In a March 10, 2004 entry, the hearing examiner directed:

As an aid to the hearing examiner and in order to define the scope of the proceedings, the parties are directed to file with the Board a pre-hearing brief representing the factual premises and legal arguments each party believes are at issue in this action. Specifically the parties are to address whether claim preclusion or issue preclusion (or both) applies in this action, and whether *State ex rel. Van Dyke v. Public Employees Retirement Board* [99 Ohio St.3d 430], 793 N.E.2d 438 (2003) limits in any way the options and findings available to the Board in this action.

{¶ 59} 12. On April 26, 2004, the hearing examiner conducted a hearing, which was recorded and transcribed for the record.

{¶ 60} 13. On June 28, 2004, the hearing examiner issued his report and recommendation, which states:

**Nature of the Case**

These are administrative proceedings taken pursuant to O.A.C. § 145–1–11 (Appeal of PERS Staff Determination), on behalf of 51 employees of the Franklin County Public Defender's Office. Each of these employees began their employment after the Office was formed as a non-profit entity in 1984, and each seeks a determination that from the time they were hired through January 1, 1999, their employment should be considered public employment and should render them eligible for service credit in the Ohio Public Employees Retirement System.

Upon its review of the application for membership in PERS, senior staff determined that in order for the claimants to meet the statutory definition of "public employee" the Franklin County Public Defender's Office would need to meet the definition of a "public employer" during the relevant time period (i.e., between the date the employee was hired and January 1, 1999). Because it found the Office was not operating as a public employer during this time period, senior staff found the claimants were ineligible for membership in PERS. The claimants disagree, and seek an administrative review of that decision.

**Issues**

The core issue in this administrative action is whether the Franklin County Public Defender's Office was a public employer between 1984 and 1999. This is not the first action that called for an interpretation of fact and law regarding

the FCPDO and its corporate form. In 2000 Omia Nadine Van Dyke made the same request based on her service in [sic] beginning in 1986. Van Dyke was an employee of the Office on two occasions, the latter of which was after the Office adopted a non-profit corporate form in 1984. Examining the nature of the corporate entity and construing the definition of "public employer," PERS' staff found that the Office was not a public employer after it incorporated as a non-profit corporation in December of 1984. Based on this finding, Van Dyke's claim for service credit for her employment after FCPDO incorporated as a non-profit corporation was denied. Van Dyke sought review of this decision through mandamus proceedings in the Tenth District Court of Appeals, which denied the application for relief; the Ohio Supreme Court affirmed, finding that when Van Dyke began working for the FCPDO in 1986, "she was beginning a term of employment with a private contractor that years before had taken over the publicly operated function."

At issue, then, is whether the Franklin County Public Defender's Office was a private contractor that had taken over the publicly operated function when each of the 51 claimants first began their employment. The Respondents assert that the determination made by the Board and subsequently affirmed by the court of appeals and the Ohio Supreme Court controls the disposition of the claims of these 51 employees. The claimants argue that there is no preclusive effect that would determine their service credit claims and seek to challenge the bona fides of the non-profit corporation created in December, 1984. The Claimants further assert that while there should be no preclusive effect flowing from the Van Dyke litigation, if there is going to be a preclusive effect from the Van Dyke decision, then there should be preclusive effect supporting a finding that the Franklin County Public Defender's Office acted in bad faith when they placed employees of the office in the Social Security system instead of PERS, and that the Office should be precluded from denying this claim because, according to the Claimants, this finding of bad faith was made during the Supreme Court's review of the operation of the FCPDO in Mallory.

Because I find that for the relevant time period the Franklin County Public Defender's Office was a private contractor that had taken over a publicly operated function, I recommend the Board deny the Claimants' application for service credit and affirm the decision of the PERS senior staff as set forth in the letter of September 3, 2003. My analysis follows.

**Summary of the Evidence**

The Claimants are 51 present and former employees of the Franklin County Public Defender's Office who were hired after December 31, 1984 and before January 1, 1999. Each seek retroactive and prospective coverage in PERS, and each were covered by Social Security instead of PERS during the relevant

time period. In order to efficiently present the facts supporting each application for service credit, and in order to permit the Respondents to advance their assertion that the issues raised in this action have already been decided and should not now be relitigated, the Respondents presented an affidavit by the Franklin County Public Defender, Yeura R. Venters. According to Mr. Venters, in 1985 an Ohio not-for-profit corporation known as the Franklin County Public Defender was formed, and remained so until it was replaced as the provider of legal representation for indigent defendants in criminal prosecutions in Franklin County courts by the County Defender in 1999. Mr. Venters stated that it was the Franklin County Public Defender that hired Omia Nadine Van Dyke as a staff attorney in April, 1986, and it was the same entity that the Supreme Court of Ohio determined to be a private, non-profit organization in *State ex rel. Van Dyke v. Public Employees Retirement Board, et al.* (2003), 99 Ohio St.3d 430, 2003 Ohio 4123, 793 N.E.2d 438. Mr. Venters also stated that all Claimants in the matter now before the Board were hired by the Franklin County Public Defender at various dates between January 1, 1985 and December 31, 1998; and that the same corporate entity that hired Ms. Van Dyke also hired all of the Claimants in this matter. See, Affidavit of Yeura R. Venters dated April 22, 2004.

Although the Claimants objected to this affidavit on the grounds that it is hearsay and they were unable to cross-examine the affiant, the evidence was admitted, along with a substantial number of exhibits on behalf of both the Claimants and the Respondents (these are identified on pages 3 through 5 of the transcript of proceedings from April 26, 2004).

Upon review of the evidence now in the record, it appears the legal interests advanced by Ms. Van Dyke in her application for relief first from the PERS Board and thereafter from the courts in mandamus are substantially the same as those now at issue: both suits seek a determination whether the Franklin County Public Defender Office is, or is not, a public employer; both Ms. Van Dyke and the Claimants began their employment with the not-for-profit corporation after 1984 and before 1999; upon review the Tenth District Court of Appeals found the not-for-profit corporation was not a public employer; and the Ohio Supreme Court affirmed that finding. The interests of Ms. Van Dyke and her colleagues in the office were identical: all hoped to challenge a determination of the PERS staff that the not-for-profit corporation did not meet the statutory definition of a public employer. It appears from a review of the many exhibits, briefs, and arguments submitted on behalf of the Claimants, that their hope is to be permitted to attack the decision of the PERS staff and collaterally attack the decisions rendered by the Court of Appeals and the Ohio Supreme Court, the latter of which held that when she began a term of

employment in April of 1986, Ms. Van Dyke "was beginning a term of employment with a private contractor that years before had taken over the publicly operated function." 793 N.E.2d at 443. Upon its review of the contentions raised in that case, the Ohio Supreme Court found the PERS Board did not abuse its discretion by concluding Ms. Van Dyke was not a public employee.

## Analysis

From the briefs and arguments now before the Board, it appears the Claimants seek to attack these prior judicial and administrative findings. The petitioners would do so by introducing evidence and advancing legal arguments that they claim would show the FCPDO was a public employer because of the control exercised over the nonprofit corporation by Franklin County. These arguments involve "arguments of: agency, control, alter ego, lack of mind, will or existence of its own, or piercing the corporate veil." Claimants' Brief on Issue Preclusion, p. 14 (filed April 12, 2004). Upon review of the exhibits admitted into evidence it appears the controlling adjudicative facts and applicable law preclude the Claimants' cause in these administrative proceedings, because the issue has already been fully and fairly litigated and decided by courts of competent jurisdiction, and the parties are sufficiently similar and are possessed of sufficiently similar interests to warrant precluding a collateral attack on the prior administrative and judicial decisions.

From the record the Respondents have established that Ms. Van Dyke was a co-worker and a contemporary of the Claimants in this administrative action, and that like the Claimants, Ms. Van Dyke sought to challenge the determination that found her employer to be a private and not a public employer. She shared with the Claimants now before the Board a common interest in having the courts review the nature of the corporate form adopted by the Franklin County Public Defender Office, and like the Claimants she sought a conclusion that the office was a public employer. There was that degree of "mutuality of interest, including an identity of desired result," that "creates privity" between prior and present parties. See *Brown v. City of Dayton*, 89 Ohio St.3d 245, 248, 730 N.E.2d 958, 962 (2000). The fundamental difference between the presentations in Van Dyke and those now before the Board are the innovations in theories of possible relief the Claimants hope to bring to the table: the employees now hope to "pierce the corporate veil" so as to debunk the premises relied upon by the court in Van Dyke.

The present Claimants dispute the Respondent's assertion that there is privity between Van Dyke and the Claimants in this action. Ohio law, however, recognizes the flexible nature of privity, such that substance, rather than form, determines whether a claim or issue is barred or may be raised by subsequent

interest holders like the present Claimants: "Although the doctrine of *res judicata* generally requires an identity of parties, strict identity is not always required. The doctrine has been applied when the party in the subsequent action, though not named as a party in the prior action, was a real party in interest in that prior action. In applying the doctrine, the court will look beyond the nominal parties to the substance of the cause to determine the real party in interest." *Deaton v. Burney*, 107 Ohio App.3d 407, 669 N.E.2d 1, 4 (Ohio App.2d Dist.1995). Here the present Claimants were Van Dyke's co-workers, and share with her those facts legally significant to the disposition of Van Dyke's claim: that their common employer either was or was not a public employer as that term is used in R.C. Chapter 145.

There must at some point be a recognizable end to challenges arising out of the same set of facts. Here the Board is guided by the Ohio Supreme Court in its explanation of the limits to challenges arising from a fixed set of facts: "The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph three of the syllabus; *Trautwein v. Sorgenfrei* (1979), 58 Ohio St.2d 493, 12 O.O.3d 403, 391 N.E.2d 326, syllabus; *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, paragraph one of the syllabus. While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437–438, 254 N.E.2d 10, 13. 'In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.' Id. at 112, 49 O.O.2d at 438, 254 N.E.2d at 13." In the case now before the Board, the record establishes that the core issue relevant to both Van Dyke's appeal and the application now before the Board is whether her employer was a public employer as that term is used in R.C. Chapter 145. Claimants now are asking the Board to contradict the judgment of the court of appeals and the Ohio Supreme Court, on an issue that has actually and necessarily been litigated already.

Beyond the more clearly articulated standards of res judicata and collateral estoppel, there is also the due process protection guaranteed by the Fourteenth

Amendment. See *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 85–87 [100 S.Ct. 2035, 64 L.Ed.2d 741] (1980). Here the interests to be weighed include the individual's expectation in having an opportunity to be heard in making an application for service credits, versus the government's interests in finality once a given employer is examined by the judicial process and deemed to be, or not to be, a public employer. The individual's interest is tempered: he or she is not being deprived of a right or benefit already enjoyed, but instead seeks a judicial determination that he or she is eligible for such a right or benefit. Further, the government's interest is substantial: to permit relitigation on the question of whether a given employer is or is not a public employer would present significant administrative burdens to a stakeholder such as the Public Employees Retirement System. For that matter, it would also present a significant burden to employees, who might find a recalcitrant employer stubbornly litigating again and again a PERS staff decision that it is a public employer, as soon as a new batch of employees arrives on the scene.

We can draw guidance on this point from the Supreme Court, which held "State courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes." *Richards v. Jefferson County, Alabama*, 517 U.S. 793, 798 [116 S.Ct. 1761, 135 L.Ed.2d 76] (1996). The constitutional inquiry then turns to whether the interests of the subsequent petitioners were adequately represented in the prior proceedings. 517 U.S. at 799 [116 S.Ct. 1761, 135 L.Ed.2d 76][.] Given the degree of common interests and issues presented by Van Dyke in her prior action both before the Board and in the mandamus action, the Claimants' due process rights have been protected.

**Findings of Fact**

[One] Claimants in this action are 51 present or past employees of the Franklin County Public Defender Office whose employment in the Office began after December 31, 1984. They seek service credit as public employees from the time they began their employment at the office until January 1, 1999.

[Two] By letter dated February 8, 2001, the Claimants requested a determination by the Ohio Public Employees Retirement Board and pursuant to R.C. § 145.01(A)(4), that the Claimants were public employees during the period from the date of their hire through January 1, 1999.

[Three] Upon review of the premises in support of their applications, PERS staff determined that the employer, the FCPDO, was not a public employer and the Claimants were not public employees, and therefore denied the application for service credit.

[Four] Upon timely application filed on September 11, 2003 and made pursuant to the provisions of O.A.C. 145–1–11, the Claimants appeal from the decision and final determination of the staff of the Public Employees Retirement Board. [Five] Upon receipt of the application for administrative review the Board appointed an administrative hearing examiner and the parties presented evidence and arguments in a record hearing conducted on April 26, 2004. [Six] Upon review of the arguments and evidence now before the Board, I find that all of the Claimants in this action were hired by, and throughout all of the relevant time period all of the Claimants continued to work for, the FCPDO at a time when the Office was, according to the Ohio Supreme Court, "a private contractor that years before had taken over the publicly operated function" of the public defender's office. See *State ex rel. Van Dyke v. Public Employees Retirement Board et al.* (2003), 99 Ohio St.3d 430, 2003 Ohio 4123, 793 N.E.2d 438, 444.

**Conclusions of Law**

[One] Pursuant to the provisions of R.C. 145.01, whether a person is a public employee, and thus eligible for service credit through the Public Employees Retirement System, is to be determined by the PERS Board, applying the provisions of R.C. Chapter 145.

[Two] Whether the Claimants are public employees depends in part on whether their employer is a public employer, as that term is used in R.C. Chapter 145. In a case where a given employee is not regarded as and has not been regarded by the PERS as a public employee, the burden of establishing that an employee is a public employee is upon the employee, and is met only when by a preponderance of the evidence the employee establishes he or she qualifies as a public employee as defined in R.C. Chapter 145.

[Three] Where the record establishes that the employer in this action, the Franklin County Public Defender Office, was during all relevant times not a public employer but was instead a private contractor, as is the case here, such a record does not support the Claimants' application for PERS service credit for the period from December 31, 1984 to January 1, 1999.

**Recommendation**

Upon examining the evidence now before the Board and upon consideration of the premises and arguments advanced by the parties to this proceeding, I recommend the Ohio State Public Employees Retirement Board affirm the senior staff decision of September 3, 2003, and find that because the Claimants were not working for a public employer, their claims for coverage must be denied. This recommendation is not a final decision, and it shall not become effective unless and until the PERS Board adopts the same in the manner provided for by O.A.C. 145–1–11.

{¶ 61} 14. On July 16, 2004, relators filed objections to the report and recommendation of the hearing examiner.

{¶ 62} 15. On August 18, 2004, PERB heard relators' objections. Counsel for relators was present at the board hearing, addressed the board, and answered questions from the board.

{¶ 63} 16. By letter dated August 25, 2004, from the PERS executive director, the parties were informed as follows:

> The OPERS Retirement Board has instructed me to inform you of its action taken at the Board's August 18, 2004 meeting.
>
> The Board accepted the findings of fact and conclusions of law from the June 28, 2004 Report and Recommendation and found that the Franklin County Public Defender's Office was not operating as a public employer from January 1, 1985 through January 1, 1999, and therefore claimants request for OPERS service credit for this time period is denied.

{¶ 64} 17. On December 3, 2004, relators filed this mandamus action.

## Conclusions of Law

{¶ 65} The issue is whether respondent PERB correctly determined that the doctrine of collateral estoppel or issue preclusion bars relators' claims.

{¶ 66} Finding that PERB correctly applied the doctrine of collateral estoppel or issue preclusion, the magistrate recommends that this court deny relators' request for a writ of mandamus, as more fully explained below.

{¶ 67} The doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, at ¶ 6.

{¶ 68} Claim preclusion prevents subsequent actions by the same parties or their privies based upon any claim arising out of a transaction that was the subject matter of a previous action. Id.

{¶ 69} In *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140, the court had occasion to succinctly summarize the doctrine of issue preclusion:

> The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52

N.E.2d 67, paragraph three of the syllabus; *Trautwein v. Sorgenfrei* (1979), 58 Ohio St.2d 493, 12 O.O.3d 403, 391 N.E.2d 326, syllabus; *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978, paragraph one of the syllabus. While the merger and bar aspects of *res judicata* have the effect of precluding the relitigation of the same cause of action, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437–438, 254 N.E.2d 10, 13. "In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Id. at 112, 49 O.O.2d at 438, 254 N.E.2d at 13.

{¶ 70} In the magistrate's view, that the nonprofit defender was not a public employer and thus its employees hired after January 1, 1985, were not public employees was actually and necessarily litigated and determined by the Supreme Court of Ohio in the *Mallory* and *Van Dyke* cases. Moreover, relators are in privity with Omia Nadine Van Dyke, relator in the *Van Dyke* case. Accordingly, under the doctrine of issue preclusion, also known as collateral estoppel, relators in this action are precluded from challenging the prior court determination that the nonprofit defender was not a public employer.

{¶ 71} Analysis begins with the *Mallory* case, which was initially discussed above. As noted above, Diane Mallory began her employment at FCPDO during the pre–1985 period when the FCPDO was not incorporated. Her employment continued into the period when the FCPDO was incorporated. *Mallory* held that the FCPDO, prior to its incorporation, was a public employer, and thus, Mallory was a public employee entitled to PERS membership.

{¶ 72} As for the period of Mallory's employment after the incorporation of FCPDO, the court determined that Mallory's rights to PERS membership continued because of the so-called carryover provision, R.C. 145.01(A)(2), which provides that a public employee means the following:

A person who is a member of the public employees retirement system and who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function. The governmental unit with which the contract has been made shall be deemed the employer for the purposes of administering this chapter.

{¶ 73} As respondent PERB correctly points out here, by engaging in the carryover analysis, the *Mallory* court necessarily recognized that the nonprofit

defender was not a public employer because R.C. 145.01(A)(2) is applicable only when the PERS member continues to perform the same or similar duties "under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function." Thus, the *Mallory* court necessarily viewed the nonprofit defender as a private contractor who had contracted to take over what was previously a publicly operated function.

{¶ 74} In *Van Dyke,* Omia Nadine Van Dyke began employment as a legal intern in February 1982 with FCPDO. Upon her admission to the Ohio bar, FCPDO promoted Van Dyke to the position of staff attorney representing indigent defendants. In November 1985 (after the incorporation of the FCPDO), Van Dyke resigned her staff attorney position at nonprofit defender and began working as a staff attorney in the Bureau of Support of the Franklin County Court of Common Pleas, Division of Domestic Relations. Her duties at the Bureau of Support did not involve representation of indigent criminal defendants.

{¶ 75} In March 1986, Van Dyke resigned her position with the Bureau of Support in order to accept her rehire as a staff attorney at nonprofit defender. Van Dyke remained at nonprofit defender until she resigned in August 1991, to accept a magistrate's position with the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

{¶ 76} At issue in *Van Dyke* was whether Van Dyke met the R.C. 145.01(A)(2) carryover provision when she returned to employment with nonprofit defender in April 1986.

{¶ 77} In determining that Van Dyke did not meet the R.C. 145.01(A)(2) carryover provision, the *Van Dyke* court explained:

> Van Dyke continued to work until 1985 performing the public function of providing legal services for indigent criminal defendants for the contractor, FCPDO, after its 1984 incorporation as a nonprofit entity. In November 1985, however, she resigned her position with FCPDO and began employment with the bureau of support. When she was reemployed by FCPDO in April 1986, she was not "continuing" her employment with a private contractor that was taking over a previously publicly operated function. Instead, in April 1986, she was beginning a term of employment with a private contractor that years before had taken over the publicly operated function.

> * * * [C]ontrary to the court of appeals' holding, Van Dyke did not "continu[e] in an unbroken chain of service as an attorney for the county * * * when she returned to the FCPDO and resumed her duties as a staff attorney." Rather,

when she began her second period of employment with FCPDO, it was no longer a county agency.

Id. at ¶ 29–30.

{¶ 78} As respondent PERB points out here, the *Van Dyke* court's determination that the FCPDO "was no longer a county agency" when Van Dyke was rehired as a staff attorney in April 1986 was a necessary predicate to its ultimate determination that Van Dyke was not a public employee when she was rehired by nonprofit defender as a staff attorney. Although the issue focused primarily on the applicability of the carryover provision, nevertheless, the court's carryover analysis was factually premised upon nonprofit defender's status as a private employer.

{¶ 79} As previously noted, the magistrate also finds that relators are in privity with *Van Dyke. Brown v. Dayton* (2000), 89 Ohio St.3d 245, 730 N.E.2d 958, is instructive, if not dispositive.

{¶ 80} In *Brown,* plaintiffs Brown, Righter, Patterson, Sweeney, and Howie filed a declaratory judgment action on October 14, 1993, challenging the validity of a rezoning ordinance that had been enacted by the city of Dayton. The ordinance in effect permitted the construction of a waste disposal and recycling facility within the boundaries of Dayton. The *Brown* plaintiffs referred to themselves as residents and taxpayers within the city of Dayton.

{¶ 81} Previously, on March 30, 1992, prior to the enactment of the rezoning ordinance, the *Wall* plaintiffs filed suit seeking to enjoin the city commission from voting on or enacting the proposed ordinance on grounds that the proposed ordinance, as it was to be voted on, would not have been on file for 30 days as required by Dayton Revised Code of General Ordinances. *Wall v. Dayton* (May 4, 1993), Montgomery App. No. 13419, 1993 WL 143770. The trial court held hearings and, in an April 8, 1992 order, declined to enjoin a vote on the ordinance. The commission scheduled a public hearing and vote for April 15, 1992. The *Wall* plaintiffs did not seek a stay or injunction pending their appeal of the trial court's order. On April 15, 1992, the proposed ordinance was adopted. On May 4, 1993, the Montgomery County Court of Appeals dismissed the appeal on grounds that the *Wall* plaintiffs' claims were moot because they sought to enjoin a vote that had already been taken. The *Wall* plaintiffs did not appeal the appellate court's decision.

{¶ 82} In *Brown,* only plaintiff Sweeney had been a plaintiff in the *Wall* case. Plaintiff Howie had testified as a witness in the *Wall* case.

{¶ 83} In *Brown,* the Supreme Court of Ohio held that the doctrine of res judicata applied. According to the court, "[t]he privity between Brown, Righter, and Patterson and the *Wall* plaintiffs is at issue." Id. at 248, 730 N.E.2d 958.

{¶ 84} Finding privity, the *Brown* court explains:

What constitutes privity in the context of *res judicata* is somewhat amorphous. A contractual or beneficiary relationship is not required:

"In certain situations * * * a broader definition of 'privity' is warranted. As a general matter, privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the *res judicata.*' *Bruszewski v. United States* (C.A.3, 1950), 181 F.2d 419, 423 (Goodrich, J., concurring)." *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 184, 637 N.E.2d 917, 923.

We find that a mutuality of interest, including an identity of desired result, creates privity between the plaintiffs in this case and those in *Wall.* In neither case did the plaintiffs seek personally tailored relief to fit their unique circumstance or factual situation. All have sought the general disallowance of the Ordinance, and all for the same reason—an alleged violation of the thirty-day publication rule. Plaintiffs all simply refer to themselves as residents and taxpayers within the city of Dayton. We find that their legal interests are the same and that they are in privity with each other for purposes of *res judicata.* To find otherwise would be to allow the Ordinance to come under constant attack simply by replenishing the ranks of plaintiffs.

In *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, paragraph one of the syllabus, this court held that under the doctrine of *res judicata,* "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action."

Whether the original claim explored all the possible theories of relief is not relevant. "It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit.' (Emphasis added.) * * * The doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180, quoting *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388.

Id.

{¶ 85} The magistrate finds that the *Brown* case compels a finding of privity here. In this case, relators and Van Dyke share a mutuality of interest, including

an identity of desired result. All ultimately seek a court declaration that they were public employees, notwithstanding the creation of nonprofit defender. All were employed by the nonprofit defender during the period at issue, i.e., beginning January 1, 1985, and all seek membership in PERS for their respective service time during the relevant period at issue. In sum, relators in this action are in privity with Van Dyke in her case that the Supreme Court of Ohio has previously decided.

{¶ 86} Based on the foregoing analysis, the magistrate concludes that this mandamus action is barred by the doctrine of collateral estoppel or issue preclusion, as respondent PERB correctly held in the administrative proceedings. Thus, relators' request for a writ of mandamus must be denied.

{¶ 87} Accordingly, it is the magistrate's decision that this court deny relators' request for a writ of mandamus.