[Cite as *Yeager v. Carpenter*, 2010-Ohio-3675.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

RALPH YEAGER,

    PLAINTIFF-APPELLEE,
    CROSS-APPELLANT,                CASE NO. 14-09-19

    v.

RICHARD D. CARPENTER, ET AL.,

    DEFENDANTS-APPELLANTS,        O P I N I O N
    CROSS-APPELLEES.

**Appeal from Union County Common Pleas Court**
**Trial Court No. 2006 CV 0561**

**Judgment Reversed and Cause Remanded**

**Date of Decision:   August 9, 2010**

APPEARANCES:

    *David A. Herd and J.C. Ratliff* **for Appellants**

    *David W. Orlandini and David S. Pennington* **for Appellee**

Case No. 14-09-19

**PRESTON, J.**

{¶1} Defendant-appellants/cross-appellees, Richard D. and Iva Eileen Carpenter ("the Carpenters"), and plaintiff-appellee/cross-appellant, Ralph Yeager ("Yeager"), appeal the judgment of Union County Court of Common Pleas. For the reasons that follow, we reverse.

{¶2} The Carpenters and Yeager own neighboring farmland on Osborne and Fish Daum Roads in Union County, Ohio. (Tr. Vol. I at 79-82); (Yeager Aff. at ¶¶4-5). Portions of both parties' farm fields are located in watersheds susceptible to surface water flooding. (Tr. Vol. VI at 52); (P's Exs. 24-25). On Osborne Road, Yeager's fields are on the west side of the road, and the Carpenters' fields are on the east side of the road. (P's Exs. 1-4). On Fish Daum Road, Yeager's field is adjacent to the north side of the road, and the Carpenters' field is north of Yeager's field. (P's Ex. 1). Three road culvert pipes run east and west under Osborne Road connecting the roadside ditches on Yeager's and the Carpenters' sides of the road. (Tr. Vol. III at 30); (P's Ex. 43). Two of these culverts are near the southern portion of the parties' fields, and one culvert is near the parties' northern property boundary. (Tr. Vol. I at 83); (Tr. Vol. III at 30); (Tr. Vol. VI at 42, 48); (P's Ex. 43).

{¶3} In April 2001, Yeager began efforts to divert surface waters and alleviate flooding in his Osborne Road field by land-leveling and power-ditching

into the Osborne Road county ditch. (Tr. Vol. III at 48-49, 53); (Tr. Vol. I at 94-95). As a result of Yeager's actions, surface water from his field flowed east to the roadside ditch, then north in the roadside ditch to the north culvert pipe, and then east through the north culvert pipe under Osborne Road onto Carpenter's field. (Tr. Vol. I at 94-95). In response, around May 18, 2001, Carpenter piled stone on his property in front of the north culvert pipe to slow and disburse the water before it crossed his field. (Id.); (Tr. Vol. III at 56); (Yeager Depo. at 44). As a result of Carpenter's stone pile, surface water began to back up on Yeager's field. (Tr. Vol. III at 54, 63); (Yeager Depo. at 46).

{¶4} Around April of 2002, the county road department filled in the Osborne Road ditch on Yeager's side to prevent the surface water from his field flowing north to the north culvert pipe. (Tr. Vol. III at 99). During this same time, the county replaced a crushed portion of the south culvert pipe on the Carpenters' side (east side) of Osborne Road and reinstalled the Carpenters' drop inlet (a.k.a. "breather" or "Higginbotham") about eight to ten (8-10) inches from the mouth of the newly repaired south culvert pipe. (Id. at 99-103); (Tr. Vol. I at 113-19); (P's Exs. 117-18).

{¶5} On or about May 4, 2002, Carpenter removed the drop inlet that the county reinstalled in front of the south culvert pipe and capped the drain tile that ran to the drop inlet. (Yeager Depo. at 72); (Tr. Vol. III at 104-05); (Tr. Vol. I at

113-19). In June 2003, Carpenter piled 720 feet of stone along his Osborne Road field in front of the two southern culvert pipes. (Tr. Vol. I at 119, 123); (Yeager Depo. at 59).

{¶6} On November 6, 2003, Yeager filed a complaint against the Carpenters in the Union County Court of Common Pleas (case no. 2003 CV 0396) alleging, in pertinent part, that:

> **Defendants have unreasonably interfered with the natural flow of water by piling rocks, dirt and gravel at drainage pipes, digging up a drainage tile and capping it off, and depositing gravel along the county road ditch, all affecting the water course's flow and greatly increasing the volume of water on Plaintiff's property, causing flooding onto Plaintiff's property. These actions by the Defendants have been performed maliciously, recklessly and deliberately to harm Plaintiff's property.**

(Doc. No. 96, Ex. 16). Yeager alleged three claims for relief, including: trespass, nuisance, and negligence. (Id.). Yeager sought compensatory damages of $25,000.00, punitive damages of $100,000.00, and an injunction directing the Carpenters to: remove their alterations or improvements causing the obstruction of the natural flow of water; and restore the waterway course to its former condition. (Id.). On July 12, 2004, the parties filed a joint stipulation of dismissal, dismissing all claims *with* prejudice. (Id.). On May 13, 2005, Yeager filed a motion to vacate the July 12, 2004 judgment pursuant to Civ.R. 60(B) and sought an order

dismissing the cause *without* prejudice. (Id., Ex. 17). On August 18, 2005, the trial court denied the motion. (Id.).

{¶7} On December 14, 2006, Yeager filed another three-count complaint against the Carpenters in the Union County Court of Common Pleas (case no. 2006 CV 0561), which is the subject of this present appeal. (Doc. No. 1). Count one of the complaint asserted a claim for unreasonable interference with surface water; count two asserted a claim for interference with prescriptive easement; and count three asserted a claim for nuisance and water trespass. (Id.).

{¶8} On January 16, 2007, the Carpenters filed an answer and a counterclaim for declaratory judgment. (Doc. Nos. 7-8). On May 4, 2007, Yeager filed an amended complaint asserting the same claims, and, on May 21, 2007, the Carpenters filed an answer. (Doc. Nos. 29, 38). [1]

{¶9} On September 28, 2007, the Carpenters filed a motion for summary judgment, arguing that Yeager's claims were barred by the doctrine of res judicata and the doctrine of reasonable use of surface water. (Doc. No. 77). On November 8, 2007, Yeager filed a memorandum in opposition. (Doc. No. 96). On November 29, 2007, the trial court denied the Carpenters' motion for summary judgment.

---

[1] We note that, on May 14, 2007, Yeager filed a counter-motion to compel discovery that ultimately resulted in a judgment of $6,661.10 in Yeager's favor for attorney's fees when the Carpenters failed to comply with the court's discovery order. (See Doc. Nos. 34, 177). This Court, however, reversed the trial court's judgment on September 15, 2008. *Yeager v. Carpenter, et al.*, 3d Dist. No. 14-08-15, 2008-Ohio-4646. (Doc. No. 253).

(Doc. No. 107).

**{¶10}** On December 12, 2007, the Carpenters filed a motion for leave to file an answer and first amended counterclaim. (Doc. No. 143). On December 26, 2007, the Carpenters filed a motion to clarify the trial court's denial of summary judgment. (Doc. No. 148). Yeager opposed both motions. (Doc. Nos. 154, 159).

**{¶11}** On January 7, 2008, the trial court denied the Carpenters' motion to clarify but granted the motion to file their first amended counterclaim. (Doc. No. 162). On January 9, 2008, the Carpenters filed their answer and amended counterclaim asserting six claims for relief, including: declaratory judgment; water trespass; nuisance and continuing nuisance; unreasonable interference with the flow of surface water; permanent injunction; and intentional infliction of emotional distress. (Doc. No. 163). On February 7, 2008, Yeager filed an answer to the amended counterclaim. (Doc. No. 179).

**{¶12}** An eight-day jury trial was scheduled to begin on March 24, 2009. (Doc. No. 269). Prior to trial, however, the Carpenters voluntarily dismissed three counterclaims, including: count one seeking declaratory judgment; count five seeking a permanent injunction; and count six for intentional infliction of emotional distress. (Doc. Nos. 286, 290, 291).

**{¶13}** On March 24, 2009, the jury trial commenced. During the trial, the trial court granted motions for directed verdicts as follows: in favor of the Eileen

Carpenter on all counts; in favor of Richard Carpenter on the prescriptive easement claim; in favor of Richard Carpenter on the claim for punitive damages claim; and in favor of Yeager on the claim for punitive damages. (Tr. Vol. VA at 12-16); (Tr. Vol. VII at 123-126).

{¶14} On April 3, 2009, the jury returned verdicts in favor of Richard Carpenter on all of Yeager's claims. (Doc. Nos. 294-296). The jury returned a verdict in favor of Yeager on the Carpenters' claims of nuisance but returned verdicts in favor of the Carpenters on their claims for unreasonable interference with the flow of surface water and trespass. (Doc. Nos. 293, 297-298). The jury awarded the Carpenters $13,125.00 in compensatory damages. (Doc. No. 292).

{¶15} On April 23, 2009, the trial court reduced the jury verdict to judgment, finding Yeager liable to the Carpenters in the amount of $13,125.00 for trespass and unreasonable interference with the flow of surface waters. (Doc. No. 299). The trial court also denied Yeager's request for injunctive relief. (Id.).

{¶16} On May 21, 2009, the Carpenters filed a notice of appeal. (Doc. No. 303). On June 1, 2009, Yeager filed a notice of cross-appeal. (Doc. No. 306). The Carpenters now appeal raising three assignments of error for our review. Yeager has filed one assignment of error on cross-appeal.

**CARPENTERS' ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT/CROSS-APPELLEE'S MOTION**

**FOR SUMMARY JUDGMENT AND DEFENDANT-APPELLANT/CROSS-APPELLEE'S MOTION FOR DIRECTED VERDICT BASED ON THE DOCTRINE OF *RES JUDICATA*.**

**{¶17}** In their first assignment of error, the Carpenters argue that the trial court erred by denying their motions for summary judgment and directed verdict on the basis of res judicata. We disagree.

**{¶18}** This Court reviews de novo a trial court's rulings on motions for directed verdict and summary judgment. *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶18; *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Civ.R. 50(A)(4) provides:

> **When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.**

Similarly, summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the nonmoving party, and the conclusion is adverse to the nonmoving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150.

{¶19} The Carpenters first argue that Yeager's July 12, 2004 voluntary dismissal with prejudice was an adjudication on the merits; and therefore, the acts alleged in Yeager's second complaint do not constitute trespass or nuisance *as a matter of law*. To reach this conclusion, the Carpenters rely upon this Court's decision in *Harmon v. Adams*, 3d Dist. No. 14-01-27, 2002-Ohio-2103. The facts and procedural posture of this case, however, are distinguishable from that presented in *Harmon v. Adams*.

{¶20} We explained the pertinent facts and procedural history of *Harmon v. Adams* as follows:

> **{¶ 3} [The Harmons] own a residence located in close proximity to a hog facility owned and operated by [Adams]. On December 14, 1999, [the Harmons] filed the first of two complaints alleging that the facility was negligently constructed and operated and that noise and odors emanating from the facility constituted a nuisance. [Adams] responded to the first complaint asserting that R.C. 929.04 provided a complete defense against such claims. [The Harmons] moved to strike the defense, arguing that R.C. 929.04 violated state and federal constitutional rights. The trial court denied the motion and granted summary judgment in favor of [Adams]. [The Harmons] appealed the determination.**
> **{¶ 4} On appeal, [the Harmons] reasserted their constitutional challenge against R.C. 929.04, but did not contest the court's substantive application of the statute. Upon review, we upheld the trial court's determination, finding that the [the Harmons] had failed to satisfy jurisdictional prerequisites for constitutional challenges under R.C. 2721.12.**
> **{¶ 5} On June 6, 2001, [the Harmons] filed the immediate action against [Adams] asserting essentially identical claims of negligence and nuisance. [The Harmons] incorporated into their second complaint the previously unperfected constitutional challenge and served notice upon Ohio's Attorney General by**

**certified mail. [Adams] moved for summary judgment on the basis of *res judicata* and, contending that the action constituted frivolous conduct, requested that the trial court impose sanctions against [the Harmons].**

**{¶ 6} After a hearing on the matter, the trial court found that [the Harmons'] claims were barred by *res judicata*, granted summary judgment in favor of [Adams], and imposed sanctions upon the [the Harmons] and their counsel, awarding [Adams] $1,771.00. Upon satisfaction of the sanction award, the court dismissed [the Harmons'] claims with prejudice. The instant appeal followed.**

2002-Ohio-2103, at ¶¶3-6 (footnotes omitted).

{¶21} On appeal, the Harmons argued that their continuing nuisance claim was a separate cause of action to which the doctrine of res judicata was inapplicable. Id. at ¶10. We rejected this argument, however, finding that it presupposed that the activity complained of—the operation of a hog farm—constituted a nuisance in the first place. Id. at ¶14. Next, we stated:

> **An activity which has been found per legislative determination or entry of judgment not to constitute a nuisance as a matter of law cannot become a nuisance merely by virtue of the passage of time: otherwise, claimants could bring successive nuisance actions after repeated determinations that the conduct at issue is not a nuisance. Therefore, *we must ascertain whether the judgment in the original action was tantamount to a determination that the activities complained of do not constitute a nuisance as a matter of law.***

Id. (Emphasis added); (Footnote omitted). In answering this question, we observed that the trial court previously granted Adams summary judgment on the basis of R.C. 929.04, which provides a complete defense in a civil action for

nuisances involving agricultural activities if all the statute's prerequisites are met. Id. at ¶15; R.C. 929.04. The trial court in granting summary judgment specifically found that R.C. 929.04 applied and was a complete defense. *Harmon v. Adams*, 2002-Ohio-2103, at ¶22. Based upon the trial court's explicit finding, we reasoned that the trial court's finding was "* * * equivalent to a finding that the activities complained of do not constitute a nuisance as a matter of law * * * these activities cannot become a nuisance merely by virtue of the passage of time or support an action for continuing nuisance *predicated upon identical conduct*." Id. (Emphasis added).

{¶22} In this case, we are presented with a stipulated dismissal with prejudice under Civ.R. 41(A)(1)(b) not a prior judgment entry with an express finding that the acts at issue were not a nuisance as a matter of law like in *Harmon v. Adams*. Although the parties' stipulated dismissal with prejudice is an adjudication on the merits, it does not necessarily follow that the alleged acts were not a nuisance or trespass *as a matter of law*. See, e.g., *Horne v. Woolever* (1959), 170 Ohio St. 178, 182, 163 N.E.2d 378 (when a party consents to a judgment of dismissal with prejudice, the judgment is final as to all claims asserted or which should have been asserted therein); *Tower City Properties v. Cuyahoga Cty. Bd. of Revision* (1990), 49 Ohio St.3d 67, 69, 551 N.E.2d 122 (where a dismissal is with prejudice, the effect is an adjudication upon the merits). See, also, *Lawlor v*

*National Screen Service Corp.* (1955), 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (judgment unaccompanied by findings does not bind parties on any issue which might arise in connection with another cause of action.). Since the trial court never expressly found that the acts alleged in Yeager's first complaint were not a nuisance or trespass as a matter of law, we find our decision in *Harmon v. Adams* inapplicable. *Darney v. Dragon Products Co., L.L.C.* (D. Me. 2009), 592 F.Supp.2d 180, 184, Fn.4.

{¶23} Alternatively, the Carpenters argue that the trial court erred in finding that Yeager could proceed with a continuing trespass or continuing nuisance claim, because they had not engaged in any tortious activity subsequent to the July 12, 2004 stipulated dismissal. The record in this case demonstrates otherwise.

{¶24} As the Carpenters correctly point out, it is ongoing tortious conduct, and not merely recurring injury, that gives rise to a continuing nuisance or continuing trespass claim. *Haas v. Sunset Ramblers Motorcycle Club, Inc.* (1999), 132 Ohio App.3d 875, 878, 726 N.E.2d 612; *Reith v. McGill Smith Punshon, Inc.*, 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226, ¶49. However, even at the summary judgment stage, the record contains evidence, which construed in Yeager's favor creates a question of fact concerning the Carpenters' ongoing tortious conduct subsequent to the July 12, 2004 stipulated dismissal. For

example, Yeager testified during his deposition that Carpenter expanded the south culvert "dam" thirty (30) feet south with gravel in November 2004. (Yeager Depo. at 74); (Complaint, Doc. No. 1, at ¶15d). Yeager also testified that Carpenter added more material to the south culvert "dam" in December 2004 and on July 5, 2007. (Yeager Depo. at 76, 78). Additionally, Yeager testified that Carpenter constructed another "dam" in May 2006 at the Fish Daum Road property. (Id. at 89-90); (Complaint, Doc. No. 1, at ¶15e). Yeager also submitted an affidavit in response to the Carpenters' motion for summary judgment wherein he averred to these aforementioned acts and, additionally, that Carpenter reinstalled the drop inlet tile behind the south culvert "dam" in 2005 "so that he, and he alone, would benefit from the drainage outlet provided by the drop inlet." (Doc. No. 96, Ex. 2 at ¶¶13, 15, 20). Yeager further averred that:

> **Between July 13, 2004 and the present, I have personally observed Defendant Richard Carpenter extending, improving, repairing and maintaining the dams located at Osborne road. As noted, Defendant Carpenter extended the south dam in November 2004. In December 2004, Defendant Richard Carpenter added material to the south dam. On at least five separate occasions, I have observed Richard Carpenter repairing and maintaining both the north and south dams at Osborne Road. These repair and maintenance activities included, but are not limited to, adding material to the dams to counteract natural erosion and deterioration and packing down the material to decrease the permeability of the dam.**

(Id. at ¶21).

**{¶25}** Likewise, at trial, Yeager testified that Carpenter added material to the south culvert "dam" in November and December 2004, and that Carpenter was adding material to and maintaining both dams during the end of 2004. (Tr. Vol. III at 136-38). Yeager also testified that Carpenter was maintaining the "dams" in 2005. (Id. at 153). Yeager further testified that the "dam" at the Fish Daum Road property was installed around May 17-20, 2006. (Id. at 176). Yeager, testifying concerning activities that occurred in 2005, identified the drop inlet tile that Carpenter reinstalled behind the south culvert "dam" in plaintiff's exhibit eighty-five (85). (Id. at 146); (P's Ex. 85).

**{¶26}** Construing this evidence in Yeager's favor, we cannot conclude that the trial court erred in denying the Carpenters' motion for summary judgment or motion for directed verdict based upon res judicata, because the record affirmatively demonstrates a question of fact concerning the Carpenters' ongoing tortious conduct subsequent to the July 12, 2004 stipulated dismissal. The operative facts giving rise to Yeager's claims for continuing nuisance, continuing trespass, and interference with prescriptive easement, although necessarily historically related to the claims he alleged in the first action, are, nonetheless, substantively different. Moreover, because Yeager's complaint asserted claims arising from facts occurring after July 12, 2004, this case is further distinguishable

from *Harmon v. Adams*, supra, wherein the subsequent complaint was "predicated upon identical conduct." 2002-Ohio-2103, at ¶¶5, 22.

{¶27} To the extent the trial court ruled that the doctrine of res judicata was inapplicable to Yeager's claim for interference with prescriptive easement because he never alleged this claim in the first action, we disagree with the trial court's reasoning. (Doc. No. 107). It is irrelevant whether Yeager, in fact, alleged a prescriptive easement claim in the first action—he did not—the question for purposes of res judicata is whether he *could have* alleged the claim. Whether Yeager could have alleged the claim depends upon whether the claim arose out of the "transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226. "Transaction" is defined as a "common nucleus of operative facts." Id., citing Restatement of Law 2d, Judgments (1982) 198-99, Section 24, Comment *b*. The Carpenters argue that Yeager could have asserted the interference with prescriptive easement claim in his first action since Carpenter disconnected the drop inlet tile in 2002. This argument is only partially correct. Yeager testified that Carpenter cut off and capped the drop inlet tile on May 4, 2002, and Yeager similarly averred that the drop inlet tile was removed in 2002. (Yeager Depo. at 72); (Yeager Aff., Doc. No. 96, Ex. 2 at ¶13). Yeager also alleged in his first complaint that the Carpenters had unreasonably interfered with the natural flow of

water by, among other things, "digging up a drainage tile and capping it off." (Doc. No. 96, Ex. 16 at ¶5). Thus, the Carpenters are correct that Yeager's interference with prescriptive easement claim *based upon Carpenter's act of cutting the drop inlet tile and capping it off* would be barred under the doctrine of res judicata. However, the Carpenters fail to account for the fact that, in 2005, Carpenter reinstalled the drop inlet behind the south culvert "dam" where only he could benefit from it. This act, occurring subsequent to the dismissal of the previous action, is the factual basis of Yeager's second interference with prescriptive easement claim, which is not barred by res judicata because it did not arise out of the same nucleus of operative facts as the first action. Similarly, Yeager's claims of continuing nuisance and continuing trespass arose from new tortious acts—"fresh violations" of property rights—all occurring subsequent to July 12, 2004; namely, Carpenter's acts of expanding the south culvert "dam," maintaining the "dams," adding material to the "dams," and constructing a new "dam" at the Fish Daum Road property. *Haas*, 132 Ohio App.3d at 878; *Reith*, 2005-Ohio-4852, at ¶49. Therefore, we reject the Carpenters' argument that Yeager's claims were barred by res judicata.

{¶28} For all these reasons, the Carpenters' first assignment of error is overruled.

**YEAGER'S CROSS-ASSIGNMENT OF ERROR**

**ON THE FACTS OF THIS CASE THE TRIAL COURT'S INSTRUCTION TO THE JURY ON RES JUDICATA WAS ERROR.**

{¶29} In his sole cross-assignment of error, Yeager argues that the trial court erred by allowing the jury to determine whether his claims were barred by the doctrine of res judicata. Specifically, Yeager argues that whether claims are barred by res judicata is a question of law for the trial court, and not the jury, to decide. Yeager also argues that the trial court erred in submitting the issue of res judicata to the jury when it had already ruled on this issue in its summary judgment entry. We agree with Yeager that the trial court's jury instruction on res judicata constitutes reversible error.

{¶30} "A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus. An incomplete or inadequate jury instruction will constitute grounds for reversal of a judgment where the charge as given misleads the jury. *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶32; *Columbus Ry. Co. v. Ritter* (1902), 67 Ohio St. 53, 65 N.E. 613. A jury instruction "should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury." *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 482 N.E.2d 583, citing

*Aetna Ins. Co. v. Reed* (1878), 33 Ohio St. 283, 295. Additionally, the jury must have been misled to the prejudice of the party seeking reversal. *Laverick v. Children's Hosp. Med. Ctr. of Akron, Inc.* (1988), 43 Ohio App.3d 201, 202, 540 N.E.2d 305.

**{¶31}** Prior to instructing the jury, Yeager's counsel objected twice to including res judicata in the jury instructions. (Tr. Vol. VI at 171-72); (Tr. Vol. VIII at 4). Yeager's counsel argued that it was a legal conclusion, which the trial court had already ruled upon and was inappropriate to submit to the jury. (Tr. Vol. VI at 172). Yeager's counsel also asked the trial court for an interrogatory on the issue of res judicata so that this Court might be able to determine whether Yeager was prejudiced by the instruction. (Tr. Vol. VIII at 4-7, 80). The trial court noted Yeager's objection and denied his request for an interrogatory. (Id. at 11, 80). The trial court then instructed the jury, in pertinent part:

> **The defendant claims an affirmative defense of res judicata. The burden of proving an affirmative defense by a preponderance of the evidence is on the defendant. * * * Res judicata. The defendant alleges an affirmative defense of res judicata. This means the parties to this action have previously litigated this [sic] same issues and that the prior case was concluded by a final judgment on the merits. And therefore, any subsequent action or lawsuit based on the same claims and arising out of the same trans -- and arising out of the same transaction or occurrence is barred by this doctrine.**

(Tr. Vol. VIII at 84, 95). Thereafter, Yeager's counsel objected to the jury instruction as follows:

> **On behalf of plaintiff we object to the instruction on res judicata. * * * We object to the fact that there was no interrogatory provided to the jury to address the issue of res judicata. And we object to the fact that there was no language in there about a continuing tort and its effect on a claim for res judicata.**

(Id. at 111). The trial court, again, overruled Yeager's objections. (Id. at 112).

{¶32} The Carpenters argue that the trial court's jury instruction on res judicata was not erroneous because it was a central issue in the case. We disagree for several reasons. First, the application of the doctrine of res judicata is a question of law. *Hancock Cty. Treasurer v. Ludwig*, 3d Dist. No. 5-06-26, 2006-Ohio-6486, ¶14; *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 174 Ohio App.3d 135, 2007-Ohio-6594, 881 N.E.2d 294, ¶41; *Nationwide Ins. Co. v. Davey Tree Expert Co.*, 166 Ohio App.3d 268, 2006-Ohio-2018, 850 N.E.2d 127, ¶15; *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 586, 676 N.E.2d 946. "It is clearly error to submit to the jury questions which should be decided by the court as matters of law * * * and this error is ground for reversal on the application of a party who may have been prejudiced thereby." 89 Ohio Jurisprudence 3d Trial, Section 157, citations omitted. See, also, *United Tel. Co. of Ohio v. Williams Excavating, Inc.* (1997), 125 Ohio App.3d 135, 146-47, 707 N.E.2d 1188 (allowing trial court to decide whether a contract's terms are ambiguous, a question of law, is reversible error where the jury was misled). Notably, no instructions on the doctrine of res judicata appear in the Ohio Jury Instructions.

**{¶33}** Second, *even assuming* that a jury instruction on res judicata might be appropriate in certain cases as the Carpenters' contend, the trial court in this case determined twice that res judicata did not bar Yeager's claims arising after the July 12, 2004 stipulated dismissal. (Nov. 29, 2007 JE, Doc. No. 107); (Tr. Vol. VA at 24). That the trial court had already determined Yeager's claims arising subsequent to the July 12, 2004 stipulated dismissal were not barred by res judicata is further evidenced by the fact that it specifically instructed the jury that Yeager's claims did not involve damages incurred before July 2004 "[a]nd any testimony about losses before 2004 should not be considered for purposes of calculating damages." (Tr. Vol. III at 81). Furthermore, when the Carpenters' counsel objected to the res judicata jury instruction because it omitted a sentence stating that a stipulation of dismissal is a final adjudication on the merits, the trial court responded, "* * * I think that's a non-issue. You know, the complaint says that they're not seeking damages before July 13th of '04." (Tr. Vol. VIII at 12).

**{¶34}** Third, the trial court's instruction is inadequate and incomplete because it fails to define the terms "transaction" or "occurrence," which are, themselves, significant legal terms for purposes of res judicata. *KeyBank*, 2006-Ohio-1189, at ¶32; *Ritter*, 67 Ohio St. 53; *Grava*, 73 Ohio St.3d at 382, citing Restatement of Law 2d, Judgments (1982) 198-99, Section 24, Comment *b*. Further, the instruction lacks any definition or explanation of continuing nuisance

- 20 -

or continuing trespass claims; specifically, how continuous tortious conduct can give rise to "fresh violations" of property rights not barred under the doctrine of res judicata. *Reith*, 2005-Ohio-4852, at ¶49.

**{¶35}** Fourth, the wording of the instruction is misleadingly suggestive. The instruction's wording suggests that the parties herein had, in fact, previously litigated the case; and therefore, the claims asserted *are* barred under the doctrine.

**{¶36}** For all these reasons, we reject the Carpenters' argument that the trial court's jury instruction on res judicata was proper under the facts of this case.

**{¶37}** The Carpenters next argue that the trial court's res judicata instruction, if error, was harmless. We cannot agree. In addition to the reasons already given above, the Carpenters throughout the trial characterized Yeager as "litigious," having a case of "suititis," for filing multiple lawsuits against several different people, including two against them, concerning these same issues. During opening statements, counsel for the Carpenters told the jury:

> **\* \* So let's talk about the litigation history here. I could tell that there's definitely some, I don't know, insenescent [sic] over with Mr. Yeager that there's a counterclaim by the Carpenters. Okay. Mr. Yeager's come to court trying to present his side. The Carpenters are entitled to try to present their side. Well, what you need to know and what you're going to find out through a number of witnesses that we're calling is that this has been going on a long time. Mr. Yeager has prior suits he's filed against Mr. Carpenter. He even sued the county also. He sued the county unsuccessfully trying to argue about this point. And then he sued Mr. Carpenter in this court in 2004. Five years ago he agreed to walk away. To dismiss this whole thing. Dismiss**

**this whole case. The Carpenters said yes. And we've got exhibits. I mean there's a dismissal entry in this court. Case dismissed with prejudice. That means with prejudice to refiling [sic]. Gone. Done. Over. Nope. In a couple weeks Mr. Yeager's out there trenching and digging and claims he didn't agree to it. Sued his attorney and then comes back and files this case again. So here we are. \* \* \* You will be instructed by the court because the court's already ruled that anything Mr. Yeager has and is claiming from before he dismissed his last case in July 2004, he can't present evidence on. He dismissed his case. \* \* \* You talk about litigiousness and people filing suits and getting on the Carpenters for having a counterclaim.**

(Tr. Vol. I at 49-51). During cross-examination, counsel for the Carpenters'

questioned Yeager as follows:

**Q:  \* \* \* Mr. Yeager, I'm sorry, you had a lawsuit against the Carpenter's that was dismissed in 2004 didn't you?**
**A:  Yes.**
**\* \* \***
**Q:  I do want to ask you just this dismissal of the previous lawsuit that you had, you actually had given your consent to your attorneys to dismiss that case, hadn't you?**
**A:  I withdrew my consent.**
**Q:  Okay. The question is, you had given consent to your attorneys, didn't you?**
**A:  Initially.**
**Q:  Okay. And then you ended up suing your attorney, Frank Howard, and his firm over that dismissal, didn't you?**
**A:  Yes, I did.**
**Q:  As a matter of fact also, you have also filed a suit against the Union County Commissioners, haven't you?**
**A:  An action against the Union County Engineers.**
**Q:  Okay. This is Defendant's Exhibit N. Defendant's Exhibit N from United States District Court, October 18, 2005. Ralph Yeager versus the Union County Commissioners. Do you see that?**
**A:  Yes.**
**Q:  And Steve Stolte, Union County Engineer?**

**A:** Yes.

**Q:** And the Carpenter's as well, right?

**A:** Right.

**Q:** Sir, didn't that Federal Court lawsuit, Exhibit N, that dealt with the same stuff we're here for today, right? The same drainage, the same problems, didn't it?

**A:** That dealt with prescriptive easement, violation of prescriptive easement by the county.

**Q:** Okay. You've also sued the Carpenters in that case too, didn't you?

**A:** They were part of the action. Yes.

**Q:** Okay. And weren't you making the same allegations that you're making here today?

**A:** On that part of it, yes, pretty much.

* * *

**Q:** That's the same allegations you're making against the Carpenter's here, right?

**A:** Similar allegations. Yes.

* * *

**Q:** Mr. Yeager, all this happened with this breather that you say Mr. Carpenter took out, which was on his property. That happened long before your dismissal of your case in July of 2004, right? Didn't it?

**A:** Yes.

* * *

**Q:** Okay. There's a lot of talk about July, 2004, the dismissal of your first case. And I know we asked you at the hearing we talked about, about whether Mr. Carpenter had done anything or whether there had been any changes to the dam since 2002. And you said no. And then actually we asked you at deposition May 24, 2004, if after June of 2003, if anything else had happened that had hurt your drainage. And you told us, not that I can think of right now. Right?

**A:** If that's what the deposition said.

* * *

**Q:** The filter zones that you complaint about were all in place before you dismissed your suit in July of 2004, right?

**A:** Not to the extent they are now.

**Q:** They were constructed and built, weren't they? The county -- the county came and put more rock on them, right?

**A:** Not to the extent they are now.

\* \* \*

**Q:** \* \* \* do you have a way of separating the claims, you know, the claims you've made about the Union County Engineer causing you damage and the claims you made about the Carpenters causing you damages for the same things?

**A:** Not for the same things. We're talking about two different issues here.

**Q:** Okay. Well, we're talking not just about two different issues, but, what, four or five different lawsuits, too, right?

**A:** Four.

**Q:** How many lawsuits have you filed against -- relating to this drainage problem, how may lawsuits have you filed?

**A:** I don't know.

**Q:** Okay.

**A:** I initially tried for one.

**Q:** Okay you filed one first. When did you file your first lawsuit?

**A:** That would have been 2003.

**Q:** Okay. Then you filed another lawsuit in Federal Court that we saw. That wasn't until 2005 though, right, when you sued the Union County Commissioners?

**A:** I believe. I believe.

**Q:** Okay. You had your first lawsuit dismissed in July 2004, right?

**A:** Correct.

**Q:** You sued your lawyers then right? You sued your lawyers?

**A:** Yes.

**Q:** In a malpractice case, right?

**A:** Correct.

\* \* \*

**Q:** And then your case with -- against your attorneys was settled, is that right also?

**A:** Correct.

**Q:** Okay. And then you filed another action against the Carpenters, right? And that's the action we have here, right?

**A:** After they filed an action against me.

**Q:** Okay. Well, they filed a counterclaim here against you in this case after you filed this action.

**A:** First they filed an action against me.

> **Q:   Okay.  You had also filed an action against them in Federal Court in 2005 as well, right?**
> **A:   Yes.  They were -- * * * They were part of that action.  Yes.**
> **Q:   After your first suit was dismissed in July, 2004, you actually then thereafter conducted another -- you've called it a surface relief waterway, is that right?   Did you do some additional trenching and construction?**
> **A:   That was that power ditch.  Yes.**
> **Q:   Okay.  So that's after the first case is dismissed, then you continue to power ditch to move water, right?**
> **A:   Yes.**

(Tr. Vol. III at 180, 185-187, 212, 219-220, 251-254).   In addition to Yeager's testimony, Yeager's attorney, Frank K. Howard, Esq., who represented Yeager in the 2003 lawsuit he filed against the Carpenters, testified about: filing the previous lawsuit against the Carpenters, including the previous lawsuit's general allegations and facts; the stipulation of dismissal with prejudice; and the subsequent malpractice lawsuit Yeager filed against him. (Tr. Vol. VI at 180-193).   Finally, during closing argument, counsel for the Carpenters, Mr. Herd, told the jury:

> **\* \* Mr. Yeager doesn't have a tile plan, an irrigation plan.  He has a litigation plan is what he has.  And you've all heard all about that throughout this case.  A litigation plan.  That's his solution.  Not a solution to work with people that are going to find out what's going out [sic], and find out how to take the water off his field without hurting his neighbor.  He just wants to litigate.  He wants to litigate against the Carpenters.  He wants to litigate against the county.  He want [sic] to relitigate [sic].  After his case is over he wants to come back, try a second bite at the apple when it didn't work the first time.  It's just a litigation plan.  That's all it is.  Four lawsuits: this one, the one in Federal District Court where he sued the Union County Commissioners and the Union County Engineer and the Carpenters. \* \* \* So you sue the county, you sue the Carpenters,**

**and maybe, I don't know, maybe you get lucky in one of these suits. Maybe you get lucky and you, you know, you roll the dice and you get your money. And that's what he -- that's what he's trying to do and what he's kept trying to do. So now he sued the Carpenters again, he sued his former lawyer. * * * And then it gets it to a point where that lawsuit's dismissed, July 2004. You're probably wondering why's this guy keep saying July 2004? Because that's when this suit against the Carpenters was dismissed. It was a suit about this very same stuff. It was a suit about the north culvert and the south culvert dams, the filter erosion zones, the north one, the south one. And that wasn't what that case is about Mr. Yeager would have told you. That's exactly what that case was about. Okay? Exactly. And Mr. Carpenter has to defend himself. Well, the case is dismissed in July 2004. Well, what happens? A week later Mr. Yeager is power ditching through a ridge again. * * ***

(Tr. Vol. VIII at 45-46, 55-56). Thereafter, co-counsel for the Carpenters, Mr.

Ratliff, continued with this theme:

**\* \* That's one of the problems with America. And number two and more importantly in this case, we got too many people in America suing people. In 31 years of experience, I've seen this. It's what I called suititis. Suititis. And Mr. Ralph Yeager has one of the worst cases of suititis you'll ever see. It's not who he sued. The question is, who hasn't he sued? \* \* \* But send the message to Mr. Yeager you don't litigate. \* \* \* Now, I'm asking you to send this message. \* \* \* Quit suing. You're a bad neighbor.**

(Id. at 70, 75). The jury, thereafter, returned its verdicts, and Yeager lost on all of

his claims. (Tr. Vol. VIII at 115-117); (Doc. Nos. 294-296).

{¶38} As the Court of Appeals for the Tenth District has noted:

**"The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown [not] to have been**

> **fraudulent. \* \* \* As we said in *Raysor v. Port Authority,* 768 F.2d 34, 40 (2d Cir.1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986), '[a plaintiff's] litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant. The trial court has a duty to prevent exploitation of this prejudice \* \* \*.' (Citation omitted.) Although *Raysor* dealt with questions asked of a *pro se* litigant, the serious impact of a charge of litigiousness, and the responsibility of the trial judge to guard against it, remain the same when the accusation is made in an opening statement or when the party is represented by counsel \* \* \*, particularly since counsel's objection to the statement was overruled. \* \* \* "**

*Eller v. Wendy's Internatl., Inc.* (2001), 142 Ohio App.3d 321, 332, 755 N.E.2d 906, quoting *Outley v. New York* (C.A. 2, 1988), 837 F.2d 587, 592. Throughout the proceedings, and especially in opening and closing statements, counsel for the Carpenters characterized Yeager as a litigious person, perpetuating one of the great "problems with America." The trial court's jury instruction on res judicata provided the jury the vehicle by which to send the message the Carpenters' asked the jury to send to Yeager: "Quit suing. You're a bad neighbor." Therefore, we find that Yeager was prejudiced by the trial court's erroneous instruction on res judicata. Although the Carpenters correctly note that, without an interrogatory, it is impossible to *definitively* conclude that the jury relied upon the erroneous res judicata instruction to reach its verdicts, the trial court denied Yeager's request for such an interrogatory; and therefore, we will not hold this fact against Yeager in light of the Carpenters' emphasis of the prior litigation throughout the trial.

**{¶39}** Therefore, we sustain Yeager's cross-assignment of error and remand this matter for further proceedings not inconsistent with our opinion herein.

### CARPENTERS' ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN GRANTING THE PLAINTIFF-APPELLEE/CROSS-APPELLANT'S MOTION FOR A DIRECTED VERDICT ON THE DEFENDANT-APPELLANT/CROSS-APPELLEE'S CLAIM FOR PUNITIVE DAMAGES AND ATTORNEY FEES.**

### CARPENTERS' ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON DAMAGE TO REAL ESTATE THAT IF THE REPAIR COSTS EXCEEDED THE DIFFERENCE IN THE FAIR MARKET VALUE OF THE PROPERTY IMMEDIATELY BEFORE AND AFTER THE DAMAGE THEN THIS DIFFERENCE IN VALUE WAS ALL THAT THE OWNER COULD RECOVER.**

**{¶40}** In their second assignment of error, the Carpenters argue that the trial court erred by granting Yeager's motion for a directed verdict on punitive damages and attorney fees. In their third assignment of error, the Carpenters argue that the trial court erred by instructing the jury that damages to real property are limited to the diminution of real property's fair market value if the repair costs exceed this value.

**{¶41}** We, however, overrule these assignments of error as moot in light of our decision to sustain Yeager's cross-assignment of error and remand for further proceedings.

**{¶42}** Having found error prejudicial to the cross-appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**